Mowry, Assignee, vs. The First National Bank of Baraboo and others.

*November 29, 1881 — January 10, 1882.*

Chattel Mortgage. *(1) Mortgagor's remedy when property cannot be reached. (2) When mortgagee must account for collaterals.*
Reversal of Judgment: *(3) For errors not injurious to appellant.*

1. Where mortgaged property has been sold or used by the mortgagee, or its condition changed, so that it cannot be restored to the mortgagor, the only relief available to the latter in an action to redeem is to have an accounting and be allowed the value of the property when taken from him.

---

2. Where the mortgagee of chattels subsequently received from the mortgagor collateral security, and then, after disposing of the mortgaged property in such a manner as to render him liable to account to the mortgagor, sold the collaterals: *Held,* that if it shall appear on an accounting that the mortgaged property was equal in value to the mortgage debt, the sale of the collaterals must be treated as unauthorized, and the mortgagee must account for their actual value.

3. Where a plaintiff is granted all the relief which he demands, or to which he .is entitled, he cannot complain because it is granted upon grounds different from those for which he contends.

APPEAL from the Circuit Court for *Sauk* County.

This action was brought to determine the rights of the plaintiff in and to a large amount of chattel .property and notes mortgaged and pledged by his assignor, the Wonewoc Manufacturing Company, to the Reedsburg Bank (which is a banking copartnership composed of the defendants *D. B. Rudd, E. O. Rudd, Greene, Geffert* and *Lusk),* and to the defendant the *First National Bank of Baraboo.*

The record is very voluminous. The following is a statement of the case as the same appears in the pleadings, proofs, findings of fact and judgment:

The Wonewoc Manufacturing Company was organized and became a corporation in May, 1877. In June and July, 1879, it borrowed $7,000 of the Reedsburg bank, and to secure payment thereof executed to that bank a mortgage in the usual form, dated July 24, 1879, on "all the personal property, of every kind and nature, belonging to the said Wonewoc Manufacturing Company, situated in and about their wagon factory at Wonewoc, and in and about their steam-mill at Woodland, called the 'Valley mill,' including and intending to mortgage all the stock of said company in the rough, unfinished, partly finished, finished, dried and undried wood, iron, tools, implements and machinery, not real estate; also, office safe and furniture, teams and wagons; excepting only from the personal property of said company manufactured goods ready for market, completely finished for sale."

Between July 24, 1879, and January 27, 1880, the Reedsburg bank loaned the manufacturing company other large sums of money, on which, at the date last named, the company owed the bank over $7,000 in addition to the debt secured by the mortgage. To secure the debt which thus accrued after the execution of the mortgage, the company pledged to the bank a large number of promissory notes made by the customers of the company, and amounting, in the aggregate, to about $17,000.

In February, August and October, 1879, the defendant the *First National Bank of Baraboo* loaned to the manufacturing company sums of money amounting in the aggregate to over $11,000. To secure such loans, the company pledged to the bank notes of its customers for over $17,000 in the aggregate. When the first collaterals were delivered, the company gave the bank authority, in writing, to sell them in case of default. The evidence tends to show, and the circuit court found, that a similar authority was given by the company, by parol, in respect to all the collaterals so pledged to the Baraboo bank.

January 31, 1880, the manufacturing company executed a chattel mortgage to the Baraboo bank to secure the unpaid balance (then being nearly $10,000) on the above loans, which mortgage contains the same description of property as is contained in the mortgage to the Reedsburg bank, and is made subject to it. Neither mortgage contains any stipulation affecting after-acquired property. The manufacturing company continued its business after the execution of the mortgage to the Reedsburg bank, the same as before; manufactured large quantities of the material so mortgaged into wagons, and sold the same, and purchased other large quantities of materials of the same kind and description for future use. Hence, although both mortgages contained the same description of the property mortgaged, the mortgage to the Baraboo bank covered much after-acquired property not included in that to the Reedsburg bank.

February 5, 1880, the manufacturing company, having become pecuniarily embarrassed, probably insolvent, duly and regularly assigned all of its assets to the plaintiff in trust for the benefit of its creditors. The plaintiff immediately thereupon qualified as such assignee in the manner required by the statute, and at once entered upon the duties of the trust. On the day following he took possession of the assigned property, including the property described in the aforesaid mortgages.

Afterwards, on February 6 and 7, 1880, the two banks, the mortgagees, acting together, took possession of the mortgaged property for the purpose of selling the same and foreclosing the interest therein of the mortgagor and its assignee.

Thereupon an agreement in writing, dated February 7, 1880, was entered into between the two banks of the one part, and several creditors of the manufacturing company, who had become sureties to the banks for the payment of a part or the whole of such mortgage debts (among whom were the defendants *Nathan Fisk* and *Reuben Fisk*), of the other part, in and by which agreement the banks appointed the defendant *Nathan Fisk* their agent to care for the property, and to sell the same to the best possible advantage, subject at all times to the direction of the Reedsburg bank, or its attorney, the defendant *Lusk*. In consideration whereof, the other parties to the agreement agreed to save the banks harmless from all loss they or either of them might sustain by so doing, and that the net proceeds of the property, as fast as sold, should be applied to the payment of the mortgage debts in the order of priority. Upon this agreement the plaintiff, as assignee of the manufacturing company, indorsed his approval, and *Nathan Fisk* entered upon the discharge of his duties under such appointment. He sold but little of the property, and made but little effort to sell it.

March 6, 1880, the two banks entered into a written agreement with the defendants *Nathan Fisk*, *Reuben Fisk* and

*Mrs. Sage*, in respect to the mortgaged property. By the terms of that agreement, as written, in consideration of $22,868, for which sum the three defendants last named made their promissory note to the banks, and which was the amount claimed to be due them in the aggregate from the manufacturing company, the banks sold and transferred to such last-named defendants " all of the personal property of the Wonewoc Manufacturing Company included in and covered by the said chattel mortgages, and all our [the banks'] right, title and interest in and to the said property included in and covered by said mortgages; also our right, title and interest in and to any of the personal property of the Wonewoc Manufacturing Company." The instrument further provided that the banks might retain the securities held by them as collateral to the original debts (but included in the transfer to the defendants *N.* and *R. Fisk* and *Mrs. Sage*), as collateral security for the payment of their note of $22,868.

The testimony tended to prove, and the circuit court found, that there was no agreement by the Baraboo bank to sell under its mortgage, and that the written agreement of March 6th does not correspond with the actual agreement of the parties in that particular. The court seems to have held that the latter bank conveyed only its interest in the mortgage and mortgaged property, instead of making an absolute sale of such property.

Immediately after March 6th the purchasers under the agreement of that date proceeded to work up the materials mortgaged, and to sell the same, so that but little thereof remained on hand at the time of trial. Such purchasers also organized themselves with a copartnership under the designation of the " Wonewoc Wagon Company," and June 1, 1880, sold a large share or interest in the property and business of the company to M. H. and William Case.

This action was commenced in April, 1880. On June 29, 1880, the Wonewoc Wagon Company sold at public auction,

upon due notice, all of the uncollected collaterals theretofore pledged by the manufacturing company to the Baraboo bank. One Briggs became the purchaser of such collaterals, for $4,250. The bank had theretofore collected on such collaterals nearly $1,900.

The circuit judge filed findings of fact and conclusions of law, pursuant to which judgment was duly entered. This judgment is preliminary to and the basis for an accounting between the parties, which is therein ordered.

To understand fully and correctly the questions in controversy on this appeal, and the findings and decisions of the circuit judge thereon, it seems necessary to insert here the whole judgment. Exhibit A, mentioned therein, is a list of the collaterals pledged to the Reedsburg bank, and exhibit B of those pledged to the Baraboo bank. The judgment is as follows:

"It is considered and adjudged that the equity of redemption of the property covered by the said chattel mortgages mentioned in said complaint and finding has not been foreclosed, and that the defendants are liable to account for the value of the property covered by both mortgages, and of which they took possession February 7, 1880, at the time they so took possession of the same, deducting therefrom the indebtedness due on both said mortgages; that the sale of March 6, 1880, amounted only to a sale and transfer of the mortgage interest of the mortgagees named in said finding, in the property covered by their said mortgages, and not to a foreclosure of either of them; [and that no sale was made, or attempted to be made, on the mortgage to the *First National Bank of Baraboo*, and that none was effected on the separate property covered by the other mortgage.]

"And it is further considered and adjudged that the defendants the *First National Bank of Baraboo*, *Nathan Fisk*, *Reuben Fisk*, and *Mary E. Gale Sage*, account to said plaintiff for the sum of $1,886.38, collected on said collaterals men-

tioned and described in said Exhibit B, and for the sum of $4,250, realized from the, sale of such as were sold June 29, 1880, to P. R. Briggs; [and that such sale was valid and rightfully made, and extinguished the right, title and interest of said plaintiff in and to the collaterals so sold.] ·

· " And it is further considered and adjudged that the defendants *D. B. Rudd, E. O. Rudd, J. L. Greene, Henry Geffert* and *James W. Lusk,* and *Nathan Fisk, Reuben Fisk* and *Mary E. Gale Sage,* have the right to hold the collaterals mentioned in said Exhibit A, and to collect the same, until the debt for which they were pledged shall be fully paid; and that upon the payment of any balance due on said debt the said plaintiff will be intitled to such as are uncollected; [that the defendant *Nathan Fisk* was the agent of the mortgagees named in the chattel mortgages only; that the agreement by which he became such agent did not postpone the right of the mortgagees or cither of them to take possession of said mortgaged property at any time; and that he was not the agent of the said mortgagor or its said assignee.]

"And it is further considered and adjudged that it be, and hereby is, referred to J. M. Morrow, Esq., of Sparta, Wisconsin, as sole referee, to ascertain and report — *first,* the value of the property covered by said|chattel mortgages, and each of them, on February 7, 1880, and on March 6, 1880, to the end that the same may be more fully and definitely ascertained, and also the value at said times of the collaterals mentioned and described in said exhibits A and B, to be stated separately; *second,* what sum or sums were collected or realized from the sale of the property by *Nathan Fisk* while he was acting as such agent as aforesaid, and the expenses of sale and collection; *third,* what amount was due to the defendants constituting the banking partnership called the Reedsburg bank, for principal sum and interest, February 7, 1880, and also on March 6, 1880, on the debt secured by their said chattel mortgage; and also what amount was due to the *First National Bank of Baraboo*

for principal and interest, on the 7th day of February, 1880, and also on the 6th day of March, 1880, on the debt secured by its chattel mortgage, and for which the collaterals mentioned in said Exhibit B were deposited as collateral security; *fourth,* what amount was due to them, on each of said days above mentioned, for principal and interest on the notes for which the collaterals mentioned in exhibit A were pledged as security, and what amount they have collected on such collaterals since February 7, 1880; *fifth,* which of the collaterals described in said Exhibit B remained on hand uncollected on June 29, 1880, and were sold, as stated in said finding of facts, to P. R. Briggs, and the value thereof; and that, upon the coming in of said referee's report, final judgment be rendered thereon, according to law, and that all other questions be reserved until the coming in of said report."

The plaintiff appealed from those portions of the judgment inclosed in brackets.

For the appellant there was a brief by *Pinney & Sanborn,* and oral argument by *Mr. Pinney.*

*J. W. Lusk,* for respondents.

LYON, J. The object and purpose of this action is to obtain an adjudication that the plaintiff, as assignee of the mortgagor, has an equity of redemption in the property mortgaged and pledged by his assignor, the manufacturing company, to the two banks respectively. Except as to the notes pledged to the Baraboo bank and sold to Briggs, the judgment fully establishes such equity of redemption in the plaintiff; for it determines that there has been no effectual foreclosure of either mortgage, and adjudges that the defendants must account to the plaintiff for the value, at the time of seizure, of the mortgaged property seized by the two banks, February 7, 1880. The collaterals pledged to the Reedsburg bank, which remain uncollected, are still in the possession and under the control of that bank, subject to the final judgment of the

court, which will fully protect the rights and interests of the plaintiff therein.

The mortgaged property having been sold or used, or its condition so changed that it cannot be restored to the plaintiff on payment of the mortgage debts, the only relief available to him is to have an accounting of, and to be allowed the value of, the property when the same was taken from him. The judgment fully secures to him that relief.

The plaintiff contended on the trial, and here, that the sale of March 7th, by both banks, to the defendants *Nathan* and *Reuben Fisk* and *Mrs. Sage*, was and was intended to be an absolute sale of the mortgaged property, and not merely a sale of the mortgages and the mortgagee's interest in the property; also, that such sale was invalid, because one of the purchasers, *Nathan Fisk*, was the agent of the creditors of the manufacturing company, and could not become a purchaser of the property in his own right; also, because the agreement of February 6th, between the banks and the creditors, bound the banks to another mode of disposing of the property, and because the sale was (as is claimed) secret, clandestine, and for an inadequate consideration, and hence was fraudulent as against the plaintiff, who represents the creditors of the manufacturing company.

These propositions were urged in support of the claim that the plaintiff still had, notwithstanding the sale of March 7th, an equity of redemption in the property, and was and is entitled to an accounting for its value at the time it was taken from him. The learned circuit judge, in his findings, negatived all these propositions; yet on other grounds the judgment fully sustains the claim of the plaintiff in support of which they were urged. The plaintiff obtains all that he claims, and it seems quite immaterial whether the judgment is rested upon the grounds maintained by him, or upon other grounds. The result is the same in either case. If, therefore, the court erred in negativing the foregoing propositions, or either of them, the

error did not prejudice the plaintiff, and is not good cause for disturbing the judgment. These observations dispose of all questions presented by this appeal save one, which will now be considered. The circuit court adjudged that the sale to Briggs of the collaterals pledged to the Baraboo bank "was valid and rightfully made, and extinguished the right, title and interest of said plaintiff in and to the collaterals so sold," and that in the accounting the proceeds of such sale should be allowed to the plaintiff. The judgment binds the plaintiff absolutely and unconditionally by that sale, and limits the amount that he can ever realize, under any circumstances, on account of such collaterals, to the sum paid by Briggs therefor. We think the judgment in this particular is premature and may be erroneous.

If it should appear in the accounting that the property mortgaged to the Baraboo bank was, when seized, of a value equal to the debt which it was given to secure, the debt was thereby paid, and the collaterals, pledged to secure the same debt, belonged to the plaintiff and should have been delivered to him. In that case the bank ceased to have any lien upon the collaterals, and had no right or authority whatever to sell them.

The learned counsel for the plaintiff very earnestly maintains that the value of such property not included in the mortgage to the Reedsburg bank is sufficient to pay the whole mortgage debt. But, however that may be, a provision should not be retained in the judgment which might prevent the plaintiff from recovering the full value of the collaterals sold to Briggs, in case it shall be found that the mortgage debt was satisfied before the sale of the collaterals.

We think the testimony sufficient to support the finding of the court that the manufacturing company authorized a sale of all the collaterals pledged to the Baraboo bank, in case of default in payment of the mortgage debt. If it turns out, therefore, that any portion of the mortgage debt remained un-

satisfied when such collaterals were sold, that would demonstrate that the sale was properly made. The sale to Briggs seems to have been fairly made, and on due and sufficient notice. If the manufacturing company was then in default on any portion of the mortgage debt, it would result that the sale was valid and binding upon the plaintiff, and he could only be allowed in the accounting the sum for which the collaterals were sold. In that event the judgment in its present form would be correct. But until the fact that there was no such default is made to appear, the clause of the judgment under consideration endangers the rights of the plaintiff, and should be expunged. We must therefore reverse that part of the judgment, without prejudice, however, to the right of the court, after the accounting, to incorporate it in the final judgment if it shall be found that there was a default upon the mortgage debt or any part of it when the collaterals were sold.

It does not seem to be questioned that, in any event, Briggs took a good title to the collaterals purchased by him. We are inclined to think that he did. The plaintiff seems satisfied to pursue his remedy against the defendants, who disposed of the collaterals, and who are, doubtless, abundantly responsible for any judgment that may be recovered against them.

It is only necessary to say, in conclusion, that we think the evidence sustains the validity of the sale of March 7th by the banks to the defendants the *Fisks* and *Mrs. Sage*, as found by the judge.

The Reedsburg bank has no interest in that portion of the judgment which we reverse, and hence the defendants constituting that bank should not be required to pay any of the costs of this appeal.

*By the Court.*— That portion of the judgment of the circuit court which adjudges that the sale of the collaterals to Briggs "was valid and rightfully made, and extinguished the right, title and interest of said plaintiff in and to the collaterals so

sold," is reversed, with costs, to be taxed only against the defendants the *First National Bank of Baraboo, Nathan* and *Reuben Fisk,* and *Mary E. Gale Sage;* and the cause will be remanded for further proceedings according to law.