MOWRY, Assignee, etc., Appellant, vs. THE FIRST NATIONAL BANK OF BARABOO and others, Respondents.

| 66 | 539 |
|----|-----|
| d93 | 69 |
| 93 | 290 |
| 66 | 539 |
| 101 | 169 |

September 21 — October 12, 1886.

*(1) Appeal to S. C.: Interlocutory judgment: Affirmance in part: Res adjudicata. (2–4) Equity: Costs: Action to redeem or for accounting: Discretion: Stipulation as to fees of referee, etc.*

1. Where an interlocutory judgment, which determines the rights of the parties and orders a reference to state an account, is affirmed in part and reversed in part, and the cause is remanded for further proceedings, that part of the judgment which is affirmed is *res adjudicata.*
2. In an action to redeem from a mortgage or for an accounting of the proceeds of a foreclosure sale, if the defendant denies the right to redeem and all liability, a judgment in favor of the plaintiff should also award to him costs on the trial to establish his right.
3. When each party in an equitable action claims too much, the court may, in its discretion, refuse to award costs to either.
4. In an action for an accounting a reference was ordered, and the parties stipulated that the referee should be paid a certain sum per day, that the plaintiff should pay the reporter a certain sum per day, and that such sums should be considered as part of the costs in the case to await final judgment. *Held*, that such stipulation would not interfere with the discretion of the court in awarding or refusing to award costs in the final judgment.

APPEAL from the Circuit Court for *Sauk* County.

The case is stated in the opinion. The stipulation referred to therein, relating to the pay of the referee and reporter, was as follows:

" It is hereby stipulated and agreed that the fees of J. M. Morrow, Esq., as referee in this action, shall be $15 per day for each day spent in the trial and determination of the matter of said reference, and that the same shall be considered as part of the costs in the case to await final judgment. Also; that the plaintiff shall pay the reporter of the testimony taken before the referee, $10 per day and costs of transcription, and that the same shall be considered as part

of the costs in the case to await final judgment; and that an original and two copies shall be made and taxed up in the same manner."

For the appellant there was a brief by *Pinney & Sanborn*, and oral argument by *Mr. Pinney.* To the point that if a pledgee sells the pledge, and the proceeds exceed the debt, he is liable for the surplus, they cited *Hilton v. Waring*, 7 Wis. 492; *Hunt v. Nevers*, 15 Pick. 500; *Randall v. Rich*, 11 Mass. 494; *Stearns v. Marsh*, 4 Denio, 227; *Strong v. Nat. M. Bank*, 45 N. Y. 718; *Houser v. Houser*, 43 Ga. 415; *Cortelyou v. Lansing*, 2 Caines Cas. 200; *Elliott v. Armstrong*, 2 Blackf. 198; *Stevens v. Bell*, 6 Mass. 343; *Coit v. Humbert*, 5 Cal. 260; *Farwell v. I. & T. Nat. Bank*, 90 N. Y. 483. The finding and interlocutory judgment were *res adjudicatæ* on the question of the liability of the *First National Bank*, and it was beyond the power of the court to reverse its former decision, and let the bank escape. *Emmons v. Dowe*, 2 Wis. 322, 356; *Strong v. Hooe*, 41 id. 659, 971; *Rogers v. Hœnig*, 46 id. 361; *Webster v. Sup'rs Oconto Co.* 47 id. 225; *Branger v. Buttrick*, 28 id. 450; *Moll v. Benckler*, id. 611; *Hill v. Hoover*, 9 id. 15; *Watson v. Appleton*, 62 id. 267, 271; *Adams v. Myers*, 61 id. 385; *Webb v. Buckelew*, 82 N. Y. 555; *Van Cott v. Van Brunt*, id. 535, 543; *Wood v. Byington*, 2 Barb. Ch. 387. Under the stipulation the parties were liable to the referee as on contract for his fees, but the plaintiff only was liable for the reporter's fees, which he was to pay; and between the parties the ultimate liability *was to depend on the final judgment* — not on the final judgment as to costs, but the final recovery in the action. If plaintiff recovered he was to *tax up* the reporter's fees paid by him. But on the theory of the judgment rendered, they never could be "taxed up" at all, since the defendants were not to pay them. See *Malone v. Roby*, 62 Wis. 459.

*J. W. Lusk*, for the respondents.

TAYLOR, J. The appellant, as assignee of the Wonewoc Manufacturing Company, brought this action against the respondents and others to compel them to account for the value of certain goods and chattels which were mortgaged by said company to the said national bank, and also to the Reedsburg Bank, and for the value of certain choses in action, which were also pledged by the manufacturing company to secure the payment of money loaned by said banks to said company.

The evidence shows that the mortgagees took possession of the property mortgaged, and sold or otherwise disposed of the same, but have done so in such manner as not to foreclose the equity of redemption of such assignee as the representative of the company; and it further appears that the mortgaged property has been so disposed of and mixed up with other property that it is impossible for the mortgagees to return the same to the plaintiff should he pay the debts secured by the mortgages. It was held, therefore, by the circuit court, that the mortgagees, and their grantees or vendees, should account to the plaintiff for the value of the property described in the mortgages which was taken possession of and sold by the defendants; such value to be ascertained at the time they undertook to sell such property under their mortgages.

The case was tried at the circuit, and findings made and judgment rendered in 1881. From the judgment so rendered in 1881 the plaintiff appealed to this court. The decision of this court upon that appeal will be found in 54 Wis. 38–49. The judgment rendered by the circuit court from which that appeal was taken is set out at length in the opinion on that appeal. Pages 43–45. It will be seen that the circuit court adjudged on the trial of this case — first, that the equity of redemption of the plaintiff in the mortgaged property had not been foreclosed, and "that the defendants are liable to account for the value of the property covered by the mortgages, and of which they took posses-

sion February 7, 1880, at the time they so took possession of the same, deducting therefrom the indebtedness due on both said mortgages; that the sale of March 6, 1880, amounted only to a sale of the mortgage interest of the mortgagees named in said findings in the property covered by their mortgages, and not a foreclosure of either of them; that no sale was made, or attempted to be made, on the mortgage of the *First National Bank of Baraboo*, and that none was effected on the separate property covered by the other mortgage." It was further adjudged " that the defendants the *First National Bank of Baraboo, Nathan Fisk, Reuben Fisk,* and *Mary E. Gale Sage,* account to said plaintiff for the sum of $1,886.38, collected on said collaterals mentioned and described in said Exhibit B, and for the sum of $4,250 realized from the sale of such as were sold June 20, 1880, to P. R. Briggs; and that such sale was valid and rightfully made, and extinguished the right, title, and interest of said plaintiff in and to the collaterals so sold."

The next part of the judgment relates to the collaterals which were pledged to the Reedsburg bank to secure the payment of $7,000, which are no longer in the case, as, by agreement of the parties, the Reedsburg Bank has accepted these collaterals in full payment of the debt for which they were pledged as security. It was further adjudged " that it be, and hereby is, referred to J. M. Morrow, Esq., of Sparta, Wisconsin, as sole referee, to ascertain and report — *first,* the value of the property covered by said chattel mortgages, and each of them, on February 7, 1880, and on March 6, 1880, to the end that the same may be more definitely and fully ascertained, and also the value at the said times of the collaterals mentioned and described in said Exhibits A and B, to be stated separately; *second,* what sum or sums were collected or realized from the sale of property by *Nathan Fisk,* while he was acting as such agent as aforesaid, and the expenses of sale and collection; *third,* what amount was due the defendants constituting the bank-

ing partnership called the Reedsburg Bank, for principal sum and interest, February 7, 1880, and also on March 6, 1880, on their said chattel mortgages; and also what amount was due to the *First National Bank of Baraboo* for principal and interest on the 7th day of February, 1880, and also on the 6th day of March, 1880, on the debt secured by its chattel mortgage, and for which the collaterals mentioned in said Exhibit B were deposited as collateral security; *fourth,* what amount was due to each of them, on each of said days above mentioned, for principal and interest on the notes for which the collaterals mentioned in Exhibit A were pledged as security, and what amount they have collected on such collaterals since February 7, 1880; *fifth,* which of the collaterals mentioned in Exhibit B remained on hand uncollected on June 29, 1880, and were sold as stated in said finding of facts to P. R. Briggs, and the value thereof; and that, upon the coming in of said referee's report, final judgment be rendered thereon according to law, and that all other questions be reserved until the coming in of said report."

On the former appeal this court affirmed the judgment of the circuit court as to all matters adjudicated by said court, except that part thereof which declared "that the sale of the collaterals mentioned in Exhibit B, for the sum of $4,250, to P. R. Briggs, was valid and rightfully made, and extinguished the right, title, and interest of said plaintiffs in and to said collaterals so sold." This court said, upon that subject: "If it should appear in the accounting that the property mortgaged to the Baraboo Bank was, when seized, of a value equal to the debt which it was given to secure, the debt was thereby paid, and the collaterals, pledged to secure the same debt, belonged to the plaintiff and should have been delivered to him. In that case the bank ceased to have any lien upon the collaterals, and had no right or authority whatever to sell them." The court also said that if it turned out, upon an accounting for the

value of the mortgaged property, that any portion of the mortgage debt remained unpaid when such collaterals were sold, then the sale was properly made, and it would result that the sale was valid and binding upon the plaintiff, and he could only be allowed in the accounting the sum for which the collaterals were sold. It is further said in that case that "it does not seem to be questioned that, in any event, Briggs took a good title to the collaterals purchased by him. We are inclined to think that he did. The plaintiff seems to be satisfied to pursue his remedy against the defendants, who disposed of the collaterals, and who are doubtless abundantly responsible for any judgment that may be recovered against them."

After the said judgment was affirmed in all respects, except as above stated, the case was sent back, and an account was taken by the referee as required by said judgment, and by the account so stated it appears that the debt of the Baraboo Bank was not entirely satisfied by the seizure and sale of the property covered by the chattel mortgages; and so, according to the decision made both by the circuit court and this court, the sale of the collaterals made to P. R. Briggs was a valid sale in all respects, and the only relief the plaintiff has is to compel the defendants to account for the money received on such sale, viz., the $4,250.

The referee to whom it was referred by the judgment aforesaid to take the evidence and report as to the different matters stated in said judgment, took the evidence, and reported to the court as follows: (1) That the value of the property covered by both of said chattel mortgages, on February 7, 1880, and March 6, 1880, was $12,780; that he did not find the value of the property covered by each mortgage separately, because, under the testimony offered, it was impossible to do so, and the property was so intermingled that, in his judgment, it was impossible to do so. (2) That he does not find the value of the collaterals mentioned in Exhibit A, being those pledged to the Reedsburg

Bank, because, by consent of all parties, they were withdrawn from consideration, having been amicably disposed of. (3) That the value of the collaterals pledged to the *First National Bank of Baraboo*, and described in Exhibit B, was on the 6th day of March, 1880, $6,136.88; and that the value of said collaterals sold on the 29th of June, 1880, was $4,250. (4) That *Nathan Fisk*, as agent for the parties, had received no more from the sales of property made by him than the expenses incurred by him as such agent. (5) That there was due the Reedsburg Bank, for the debt secured by its chattel mortgage, on March 6, 1880, $5,835.90. (6) That there was due to the *First National Bank of Baraboo*, on the debt secured by its chattel mortgage, and for which the collaterals mentioned in Exhibit B were also pledged, $9,833.19. (7) That between the 6th of March, 1880, and the 29th of June, 1880, there had been collected on the Baraboo collaterals, $1,886.88.

The referee accompanies his report with the following statement of the account between the parties, as found by. him, viz.:

| | |
|---|---:|
| Amount of mortgage debts to both banks, March 6, 1880... | $15,669 09 |
| Value of chattel mortgage property, March 6, 1880......... | 12,780 00 |
| Balance of mortgage debts after applying value of mortgaged property............................... | $2,889 09 |
| Interest at 10 per cent. from March 6, 1880, to June 29, 1880 | 90 62 |
| Balance of mortgage debts, June 29, 1880.. ......... | $2,979 71 |
| The amount collected on Baraboo collaterals from March 6, 1880, to June 29, 1880................................... | $1,886 88 |
| Value of collaterals sold June 29, 1880...................... | 4,250 00 |
| Value of collaterals included in Exhibit B............. | $6,136 88 |
| Deduct balance of mortgage debts....................... | 2,979 71 |
| Amount overpaid June 29, 1880........................ | $3,157 17 |
| Interest on same from June 29, 1880, to this date, November 29, 1884, at 7 per cent................................... | 976 08 |
| Amount to which plaintiff is entitled.................. | $4,133 25 |

This report was duly excepted to by both the plaintiff and the defendants, but, upon hearing the exceptions of both parties, the learned circuit judge confirmed the same in all respects, and afterwards, on the 17th of March, 1885, entered an order for a final judgment thereon, as follows:

" [Title of the action.]

" This case having this day come on for further consideration, and the court having heard the arguments of counsel for the respective parties; and it appearing that the defendants the members of the Reedsburg Bank, and the *First National Bank of Baraboo*, since the rendition of the former judgment herein on May 31, 1881, have not had any such interest in this action that the litigation has been thereby protracted, or made more expensive; and it further appearing that the plaintiff has never made any tender to the said defendants of the sum or sums due on the debts held by them against the Wonewoc Manufacturing Company; and the defendants, by their answer, having denied the right of the plaintiff to redeem said chattel mortgages or pledges of said chattels, as prayed for in his complaint:

" Upon consideration thereof it is ordered that judgment be rendered in favor of the plaintiff, and against the defendants *Nathan Fisk, Reuben Fisk*, and *Mary E. Gale Sage* only, for the amount found due by the referee on the 29th day of November, 1884, together with the costs of the first trial, and including all costs up to and including the date of rendering said former judgment; and that all costs in this action in this court arising from the rendition of said former judgment be taxed in favor of the defendants *Nathan Fisk, Reuben Fisk*, and *Mary E. Gale Sage* in this action, and against the plaintiff, as assignee; and judgment is ordered accordingly."

Thereafter, on March 24, 1885, final judgment was entered, in accordance with said order for judgment, in favor of the plaintiff and against the defendants the *Fisks* and *Mary*

*E. Gale Sage,* for the amount found due to him by the report of said referee, with the costs of the action previous and up to the former judgment entered therein, taxed at the sum of $985.93; and judgment was rendered in favor of said *Fisks* and *Sage* against the plaintiff for the sum of $760.71, being the amount of their costs since the rendition of the former judgment; and said judgment denied any further or other relief to the plaintiff against the defendants in the action, or against any or either of them. To the order for judgment the plaintiff duly excepted because it directed judgment against the *Fisks* and *Mary E. Gale Sage* only, and not against the *First National Bank of Baraboo* as well as the other defendants, and because of the directions as to the costs of the actions.

From this judgment the plaintiff appeals to this court, and alleges for error that the circuit court should have given the plaintiff judgment for the amount found due to him against the defendant the *First National Bank of Baraboo,* as well as against the defendants the *Fisks* and *Sage;* and also that the court erred in not adjudging to the plaintiff his costs of the second trial against all of said defendants, including said bank, and for awarding costs against the plaintiff and in favor of the defendants the *Fisks* and *Sage,* which have accrued since the first trial of this action.

It seems to us very clear that it is too late now to question the correctness of the judgment of the circuit court in this action from which the first appeal was taken, and which was, as it turns out from the evidence since taken, held to be correct in all respects. It seems to us equally clear that by that judgment the defendants the Reedsburg Bank and the Baraboo Bank were adjudged to be liable to the plaintiff for the value of the property covered by the two chattel mortgages, and that the *First National Bank of Baraboo* was adjudged to be liable to the plaintiff for the value of the collaterals mentioned in Exhibit B; and that if the

amount the bank had collected on them, and the $4,250 for which the balance were sold to Briggs on the 29th of June, 1880, exceeded the sum which remained due to the bank after applying to the extinguishment of its debt and the mortgage debt of the Reedsburg Bank the value of the property described in the two chattel mortgages, such excess should be accounted for by said Baraboo Bank to the plaintiff.

It seems to us that the language used by the court in its first judgment will not admit of any other construction than that the Baraboo Bank should account for and pay over to the plaintiff any excess it might have received from the sale of such collaterals, after applying enough of the receipts from such sale to the satisfaction of what remained unpaid on the debt due from the company to said bank. The evidence upon which the rights of the parties were adjudicated was all given upon the first trial, and there is no reason, therefore, for changing the decision of the court then rendered, even if there were any power in the court to make any change therein. That the former judgment was right can hardly be questioned. The evidence clearly established the fact that the pretended sale or sales made by the banks of the mortgaged property, and the sale made by the claimed assignee of the banks, did not foreclose the equity of redemption of the mortgagor, and he was therefore entitled to a return of the mortgaged property on the payment of the mortgage debt; or the mortgagees must account to him for the value of the property mortgaged, if they have put it out of their power to make such return. The evidence on the former trial convinced the circuit court and this court that the mortgagees had put it out of their power to return the mortgaged property on the payment of their demands, and that they had not foreclosed the mortgagor's equity of redemption. The only thing then to be done was to charge the mortgagees with the value of the property

which had been wrongfully converted by them, apply such value to the satisfaction of their debts, and, in case the property so converted exceeded the amount of their debts, direct judgment against them for such amount; and this was done by the first judgment in this action. The mortgagees in this case are in a similar position to the mortgagee of real estate who has taken an absolute deed to secure his debt, and, being in possession or the possession being vacant, has conveyed the mortgaged estate to a *bona fide* purchaser without notice. It is clear that in such case he would be compelled to answer to the mortgagor for the value of the mortgaged property so conveyed by him. So, in the present case, the mortgagee having, by his acts, placed the property in such condition that the mortgagor cannot recover the same, he must account for its value.

The authorities cited by the learned counsel for the appellants in their brief fully establish the contention that the first judgment in this action is *res adjudicata* as to the parties, and cannot be changed. This certainly ought to be so in a case where there is nothing disclosed by the subsequent testimony in the case tending to show that there was any mistake made or injustice done by the first decision of the court. We think the circuit court should have rendered its judgment in favor of the plaintiff, and against the defendant the *First National Bank of Baraboo*, as well as against the *Fisks* and *Sage*, and that it was error not to render such judgment. Such error is clearly prejudicial to the plaintiff, as the judgment against the *Fisks* and *Sage* may wholly fail to satisfy the plaintiff's claim. The judgment should be against the said *Fisks* and *Sage* and the Baraboo Bank, not only for the amount found due to the plaintiff, but for the costs of the trial up to and including such first judgment.

That the plaintiff is entitled to costs on the trial to establish his right to redeem, when the defendants deny his right

of redemption, is asserted by this court in *Green v. Wescott*, 13 Wis. 606, 609. In that case the court say: "When the case was here before, we allowed costs to the appellant at that time . . . because she was obliged to come here to maintain her right to redeem, which was resisted by Wescott." So, in the case at bar, the defendants deny all right of the plaintiff to redeem the property, and so compelled him to establish his right by litigation. The costs of that litigation are therefore properly chargeable to the defendants. The appellant also claims that it was inequitable to charge him with the costs, subsequent to the first trial, of establishing the amount which he was entitled to recover. The learned circuit court seemed to intimate that, because the plaintiff did not at any time make a tender of the amount due upon the mortgages to the defendants, he should be charged with the costs of establishing the extent of his claim against the defendants. We do not think this a sufficient reason for charging the plaintiff with these costs. The proofs show that by the conversion of the mortgaged property and sale of the collaterals the debts due to the defendants were more than paid when the action was commenced. There would seem to be, therefore, no just cause for charging the plaintiff with the costs because he did not make a tender of the debt which had been already overpaid. As it may be said that both parties were in fault by the nature of the claims made by them against each other, and as the plaintiff was in default in not paying his debts to the defendants when they became due, and so was in some degree chargeable for the necessity of taking the account to fix the amount due to him, and because in his complaint he claimed judgment for an amount greatly in excess of what he established on the trial, and so made a defense by the defendants as to the extent of the claim necessary, he should not be allowed the costs of establishing the amount of his claim. On the other hand, we see

no equity in allowing the defendants the costs of this proceeding, who have constantly denied any liability on their part to the plaintiff. We think the rule adopted by this court in the case of *Green v. Wescott*, 13 Wis. 606, should be applied to these costs, and that as to them neither party should recover against the other. *Righter v. Stall*, 3 Sandf. Ch. 608; *Crippen v. Heermance*, 9 Paige, 211; *Vechte v. Brownell*, 8 Paige, 212. These cases establish the rule that when each party in an equitable action claims too much, the court, in its discretion, may refuse to award costs to either.

We are unable to see anything in the stipulation of the parties as to the pay of the referee or reporter which should interfere with the discretion of the court in awarding the costs of the action.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to the circuit court to enter judgment in favor of the plaintiff for the amount found due to him, together with the costs of the action to and including the entry of the first judgment in this action, against the defendants *Nathan Fisk, Reuben Fisk, Mary E. Gale Sage,* and the *First National Bank of Baraboo;* and that neither party be awarded costs which have accrued since the entry of such first judgment.