TRUSTEES OF ST. CLARA FEMALE ACADEMY OF SINSINAWA MOUND OF THE STATE OF WISCONSIN VS. THE DELAWARE INSURANCE COMPANY, Appellant, and McALPINE, Respondent.

SAME VS. MILWAUKEE MECHANICS' INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, Appellant, and McALPINE, Respondent.

SAME VS. NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, Appellant, and McALPINE, Respondent.

SAME VS. THE ROCKFORD INSURANCE COMPANY OF ROCKFORD, ILLINOIS, Appellant, and McALPINE, Respondent.

*March 28 — April 14, 1896.*

*Reformation of contract: Intention of parties: Insurance against fire: Builder's risk: Judgment: Determination of part of issues.*

1. The intention of the parties, to express and carry out which a written agreement will be reformed, must be the intention of both parties as to something upon which their minds actually met.

Trustees of St. Clara Female Academy vs. Delaware Ins. Co. and others.

2. Thus, a policy insuring the owner against loss by fire on a building in process of erection by a contractor will not be reformed so as to insure the contractor also, where, although it was agreed in the building contract that the owner should insure the building so as to protect the contractor's interest, the agent who issued the policy did not know of such agreement and was not requested, and did not undertake or intend, to write the insurance in that way.

3. In our practice there is no such thing as an interlocutory judgment; and there can be but one final judgment in a case, which must dispose of all the issues and the rights of the parties.

4. In an action upon an insurance policy the contractor erecting the insured building was joined as a defendant and pleaded two counterclaims, one of which was against the defendant insurance company for the reformation of the policy. An adjudication definitely and finally disposing of the matters embraced in such counterclaim, though denominated an order, is *held* to be a judgment and to be erroneous because determining a part only of the issues and rights of the parties.

APPEALS from judgments of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

These actions were upon four insurance policies, issued November 8, 1893, by the defendant companies, respectively, for $2,500 each, and there was other insurance written at the same date for $5,000, all on the plaintiff's "two and one-half story brick shingle-roof school-house, including," etc., "situate," etc., "permission being given to effect other insurance, and also to complete the construction of said building." The complaints contained the usual allegations, and claimed that a total loss of the insured property by fire occurred November 16, 1893, and that, at the time each of the policies was issued, the building was in process of construction by the defendant *McAlpine*, the contractor, and that the contract required that it should be insured for the benefit of the owner and said contractor as well; that *McAlpine* claims that such insurance was taken in part for his benefit, and that he has an interest in each policy to the extent of his loss, and therefore he was made a defendant.

Trustees of St. Clara Female Academy vs. Delaware Ins. Co. and others.

The respective companies answered, contesting their liability for the loss.

The defendant *McAlpine* answered, setting up two counterclaims: *First.* That the policies so issued in form to and in the name of the plaintiff covered all the work, labor, and material wrought into the building by him, and that said policies were in fact and in equity taken out and procured for his use and benefit, to the extent of securing to him the payment of all justly due him, which was $26,000 (of which $9,500 had been paid), and were intended by the plaintiff and the several companies for his use and benefit, and of the plaintiff, according to their respective interests; that the plaintiff, in its contract with him, had agreed, and it was its duty, to insure said building in its own and his name, sufficient to cover said work and materials, to be made payable to them as their interests might appear; that the defendant requested the plaintiff, a short time before the policies were issued, to perfect such insurance; that the plaintiff failed to obtain any insurance in defendant's name, and the only policies issued were in form in the name of the plaintiff; and that at the time of the fire it was indebted to him for work and material in the sum of $12,500; and he claimed damages against the plaintiff in that sum. *Second.* That the plaintiff fully informed the several companies of the defendant's said interest, and the plaintiff relied on the superior skill and knowledge of the companies and their agents to prepare said policies, so that the rights of all parties would be fully protected, and they knew the building was in process of erection, and that it was the plaintiff's intention to insure the building against loss by fire in such manner as to protect the rights of all parties interested therein, and that it requested the several companies to prepare said policies accordingly, and that the agent of the several companies undertook and agreed so to do; that, by mistake and inadvertence of the several companies, their

Trustees of St. Clara Female Academy vs. Delaware Ins. Co. and others.

agent, and the plaintiff, such insurance was not effected in the name of the defendant, but in the name of the plaintiff only; that at the time said policies were issued the several companies knew that the premises had been mortgaged to the Northwestern Mutual Relief Association for $10,000, and that each agreed to insure said property subject to said mortgage, but, through mistake and inadvertence, the parties to said policies failed to insert in them the fact of the existence of the mortgage, and to attach the proper mortgage clause. The defendant prayed that the several policies might be reformed and corrected so as to contain his name in addition to the plaintiff's, and express their rights and interests therein as so intended; that a statement be inserted in each policy that the property is mortgaged for $10,000 as aforesaid, or by attaching thereto the proper mortgage clause. The defendant claimed judgment against the several companies in like manner as if the policies had been written as so intended, and that they be reformed as aforesaid, and for general relief, and, if not reformed, that he recover the damages claimed in the first counterclaim against the plaintiff.

The several companies, in reply to said counterclaims, as well as by answer to the several complaints, set up various matters in defense to the claims made under the policies, and contended that the several policies were void and of no effect. The several companies, in further reply, denied, in substance, the allegations relied on to obtain a reformation of the policies; denied that they had any notice or knowledge as to the building contract or its terms or provisions before the fire, or that their agent in behalf of the plaintiff or the defendant *McAlpine* undertook or agreed to prepare said several policies so as to protect the interest of *McAlpine* in said property, or any interest therein of any person or corporation other than the plaintiff, or otherwise than as stated in and by the said several policies; and denied that

Trustees of St. Clara Female Academy vs. Delaware Ins. Co. and others.

any mistake therein or omission was made in form or sub-
stance, or that said insurance was made or intended for the
use and benefit of *McAlpine* to any extent or in any man-
ner whatever; and denied that it was so intended by the
plaintiff; and alleged, in substance, that the said policies
were issued advisedly, without mistake or inadvertence, and
that no other contract was made to or with the plaintiff than
is set forth in the policies, and that they were not requested
to, and did not, at any time, insure the interest of *McAlpine*
in the property.

The cases were heard together on the same proofs; and
the court found, among other things, that it was the under-
standing, intention, and agreement between the plaintiff and
each of said companies to insure said building against loss
by fire so as to protect all parties having interests therein,
including the plaintiff, the Northwestern Mutual Relief As-
sociation, as mortgagee, and the defendant *McAlpine*, as
they might appear; that Sister Mary Edmond, who repre-
sented the plaintiff and defendant *McAlpine*, stated to H. B.
Hobbins, the agent of the several companies in making said
insurance, that she was ignorant as to how such insurance
on an incompleted building should be taken out in order to
insure it, and that she left to said agent the matter of the
arrangement of the contract of insurance and the writing
of the policies in such manner as to insure said property
against damage by fire and protect all parties having inter-
ests therein; that said Hobbins, as such agent, in writing
such policies, labored under a mistake, believing that, if he
issued them in the name of the plaintiff, they would protect
all parties in interest, including the interests of the North-
western Mutual Relief Association and defendant *McAlpine*
as they might appear, and, in accordance with such inten-
tion, arrangement, and agreement, said property was insured
against all loss by reason of fire on the part of the plaintiff,
of the Northwestern Mutual Relief Association, as such

Trustees of St. Clara Female Academy vs. Delaware Ins. Co. and others.

mortgagee, and the defendant *McAlpine;* that at the time of the fire the building was of the value of about $26,000, and there was destroyed of labor and material wrought into the same to the value of $20,000.    The court gave judgment in each case, reforming and amending the policy involved in it by inserting therein the name of the defendant *McAlpine* as one of the assured, so that, when reformed and amended, it should name the plaintiff and *McAlpine,* as their respective interests should appear, as the parties insured, and also by attaching to said policy the mortgage clause as established by law, describing the premises insured as subject to a mortgage of $10,000 made by the plaintiff, with such stipulations and conditions as are contained in the standard mortgage clause of the state of Wisconsin; and judgment was given against each of the companies in favor of *McAlpine* for the costs of such equitable counterclaims.

The legal causes of action against the several companies have not been tried, nor the counterclaim of *McAlpine* against the plaintiff.    Each of the defendant companies appealed from the judgment so rendered against it, and the cases were argued together.

For the appellant *Delaware Insurance Company* there were briefs by *F. J. & C. F. Lamb,* attorneys, and a separate brief signed also by *Paddock, Wright & Billings,* of counsel, and the cause was argued orally by *F. J. Lamb* and *C. F. Lamb.*

*H. W. Chynoweth,* for the other appellants.

For the respondent there was a brief by *A. G. Zimmerman,* attorney, and *Burr W. Jones,* of counsel, and oral argument by *Mr. Zimmerman, Mr. Jones,* and *Mr. R. M. Bashford.*    They contended, *inter alia,* that the mistake found and adjudged and upon which reformation was granted is such a mistake, under the circumstances of this case, by whatever name it may be designated, whether of fact or of law or of mixed fact and law, that reformation was prop-

Trustees of St. Clara Female Academy vs. Delaware Ins. Co. and others.

erly granted. *Dane v. Derber,* 28 Wis. 216; *Fuchs v. Treat,*
41 id. 404; *Green Bay & M. C. Co. v. Hewitt,* 62 id. 316;
*Lusted v. C. & N. W. R. Co.* 71 id. 396; *Kyle v. Fehley,* 81
id. 67; *Whitmore v. Hay,* 85 id. 240, 251; *Bailey v. Am.
Cent. Ins. Co.* 13 Fed. Rep. 250, 253; *Williams v. North Ger-
man Ins. Co.* 24 id. 625; *Brioso v. Pacific Mut. Ins. Co.* 4
Daly, 246; *Hill v. Millville M. M. & F. Ins. Co.* 39 N. J.
Eq. 66; *Barnes v. Hekla F. Ins. Co.* 75 Iowa, 11; *German
F. Ins. Co. v. Gueck,* 130 Ill. 345; *Freichnecht v. Meyer,* 39
N. J. Eq. 558; *Snell v. Insurance Co.* 98 U. S. 85; *Woodbury
Savings Bank & B. Asso. v. Charter Oak F. & M. Ins. Co.*
31 Conn. 517.

Pɪɴɴᴇʏ, J. The conclusion of the circuit court that the
several insurance policies in question should be reformed by
adding to each of them the usual mortgage clause showing
the existence of a mortgage on the insured property run-
ning to the Northwestern Mutual Relief Association, in the
amount of $10,000, and containing stipulations and condi-
tions provided for by law and by the standard policy to be
inserted in the mortgage clause, is sustained by the evidence,
and was not contested.

The only contested question *is* whether the finding that
defendant *McAlpine* is entitled to recover judgment against
the plaintiff and the several insurance companies reforming
the several policies in question by inserting his name after
the name of the plaintiff as one of the assured, and by in-
serting thereafter the words "as their respective interests
may appear," is erroneous. This is wholly a question of fact,
and depends entirely upon the testimony of Sister Mary Ed-
mond, who represented the plaintiff in securing these policies,
and the testimony of H. B. Hobbins, the agent of the sev-
eral companies, who negotiated the insurance and issued the
policies in suit on their behalf. There is no conflict or con-
tradiction between these witnesses.

Trustees of St. Clara Female Academy vs. Delaware Ins. Co. and others.

On the 8th of November, 1893, Hobbins called on Sister Mary Edmond, in response to a letter from her saying: "As our building is being roofed, we ask you to come to Edgewood at once to attend to the insurance. . . . We are most anxious to secure ourselves against loss." The plaintiff, by a provision in the building contract with *McAlpine*, had agreed to effect insurance on the building in its own name, and in the name of *McAlpine*, against loss by fire, in such sums as might from time to time be agreed upon, "the policies being made to cover work incorporated in the building, and materials for the same in or about the premises, and made payable to the parties to the contract as their interest may appear." *McAlpine* requested the plaintiff to procure insurance shortly before the date of the policies.

Sister Mary Edmond describes the transaction in respect to the insurance, in substance, as follows: "I told Mr. Hobbins I didn't understand how insurance was taken out on a building in course of erection, and that I left entirely into his hands to attend to it." On being asked what was said during the interview with Hobbins in relation to *McAlpine* and his interest in the building, she answered, "I have no recollection of *Mr. McAlpine's* name being mentioned," and further testified that she had no recollection — that is, no distinct recollection — in regard to the contractor's name being mentioned; that she thought Hobbins knew that the building was being built by a contractor; that Hobbins asked, she thought, the amount of the contract, and everything connected with the building; that she told him $32,405 was the amount of the contract, but nothing was then said as to the amount that had been paid. Hobbins examined the building, and thought he could only put on $15,000 insurance. The policies were received two days before the fire, and she made no examination of them.

Hobbins testified that the sister said she did not know how the insurance should be written, on account of there

being a contractor building it; and he insured it in the way he did, supposing they had an insurable interest, having had the other insurance (on the other building) in the name of the Trustees of St. Clara Academy, and that he wrote this up the same way. He testified that the contractor's name was mentioned; that he was told they had paid $9,500 on the contract; that he knew of the $10,000 mortgage, and that provision was to be made for it; that she said she would leave it to him to write the insurance, because he had written all the other insurance; that he told her the building was far enough along for $15,000, and this was afterwards to be increased to $25,000, and that was virtually all there was of it. On cross-examination, he said he insured the Trustees of St. Clara Academy, and gave them these policies; that no mistake was made in writing the policies that he knew of; that he was not requested by the sisters to insure *McAlpine's* interest, and did not write his name in the policies for that reason. His risk would be what is called a "builder's risk," as contractor. Being asked if it was his intention when he wrote the policies to protect the interests of all the parties, he said, "I couldn't say that, as I supposed I insured the sisters;" that the thought that was on his mind was that he was insuring the building; that he was not asked to insure specifically the interest of the sisters or any particular interest; that it was stated that *McAlpine* was the contractor, and that there was a mortgage on the place. There was no evidence to show that Hobbins had any knowledge of the contract between the plaintiff and *McAlpine* to procure insurance on the building.

This is, in substance, all the material evidence on the vital question. It does not present a case for correction or reformation of contracts of insurance, for it wholly fails to show that any such contract or agreement was ever made as between the contractor, *McAlpine,* or any one in his behalf,

Trustees of St. Clara Female Academy vs. Delaware Ins. Co. and others.

and either of the insurance companies, or that, as between them, any such contract was ever contemplated or intended.

The case for correction or reformation of the policies by inserting *McAlpine's* name in them, as sought, fails at the very threshold, and is neither more nor less than an application to the court to make, by its judgment, contracts which the parties have wholly failed to make for themselves. This is not a case where there has been a mutual mistake either of fact or of law. It is a case where the minds of the parties to the supposed contracts have never met, either on the terms expressed in the policies or any other terms. Here there were no contracts to express. There had been no agreement for insurance, and there was no privity or contractual connection or relation between the parties. The agent of the companies had no knowledge of the agreement to insure between the plaintiff and *McAlpine;* did not know that he, or any one in his behalf, desired any insurance on his interest in the property; and the evidence is clear and decisive that the agent, Hobbins, had not been requested by any one to insure *McAlpine* or to make him a party to the policies for any purpose whatever. The insurance was made to the plaintiff as owner, and for a period of three years. When it is said that a written agreement may be corrected or reformed so as to express and carry out the intention of the parties, this must be understood as applying to the intention of the parties by reason of some mutual agreement made between them, and upon which their minds have actually mutually met, and not to some real or conjectural intention they may have separately entertained, but which never acquired the character of real contractual intention. As applied to the present case, it was not enough that *McAlpine*, or the plaintiff, or both of them, intended to have the property insured for them as their interests might appear. It was necessary for them, in order to have the relief demanded, that the defendant companies

Trustees of St. Clara Female Academy vs. Delaware Ins. Co. and others.

or their agent so understood the matter and undertook or agreed to write the insurance accordingly. While it is not material what language the parties used to express their mutual intent, the court will carry it into effect and reform the instrument accordingly, still it is only such common intent that the parties have arrived at or expressed that the court will effectuate by means of its extraordinary powers over contracts and written instruments, and in such cases it will act only upon the most clear and positive proof of mistake or fraud. The writing must be taken to contain the real contract until the contrary is established by the clearest and most satisfactory evidence; and a mere preponderance of evidence will not suffice. *Lake v. Meacham,* 13 Wis. 355, 362; *McClellan v. Sanford,* 26 Wis. 595, 607; *Blake Opera House Co. v. Home Ins. Co.* 73 Wis. 667; *Hearne v. Marine Ins. Co.* 20 Wall. 490; *Southard v. Curley,* 134 N. Y. 154; *Groff v. Rohrer,* 35 Md. 327; *Tripp v. Hasceig,* 20 Mich. 263.

The evidence, for the reasons stated, fails to bring this case within the principle of the rule invoked by respondent's counsel, in support of which they have cited many cases, and which is concisely stated by Justice MILLER in *Williams v. North German Ins. Co.* 24 Fed. Rep. 625, that "where an instrument fails to represent what *both parties* had intended to have it represent, and one party had drawn up the instrument, and the other party merely accepted it, and the fault was on the party drawing up the instrument, it may be reformed." This is clearly stated by Justice HARLAN in *Snell v. Insurance Co.* 98 U. S. 85, where it is said that, "in the attempt to reduce the contract to writing, there has been a mutual mistake, caused chiefly by that party who now seeks to limit the insurance to an interest in the property less than that agreed to be insured. The written agreement did not effect that which the parties intended. . . . He [the assured] trusted the insurance agents with the preparation of a written agreement which should correctly express the meaning

of the contracting parties. He is not chargeable with negligence because he rested in the belief that the policy would be prepared in conformity *with the contract.*" And it was held that, upon discovery of the mistake, he was entitled to relief. Other cases to the same effect, and also showing under what circumstances relief will be granted for mistake of law, were cited by respondent's counsel. We think the evidence wholly fails to show mistake either of fact or of law, but that it does appear that there was no contract or meeting of minds between *McAlpine* and the insurance companies, or either of them, or any one acting for them, to insure his interest. The finding of the circuit court upon this branch of the case is clearly erroneous.

2. There has been no trial of the legal causes of action stated in the complaints in these actions, nor has there been any trial of the counterclaims pleaded in them by *McAlpine*, in form as legal causes of action against the plaintiff. If the insurance companies should succeed in defending against the policies, the trial had in these actions and these appeals will prove to have been an idle waste of time and money. The judgments rendered on the counterclaims of *McAlpine* against the insurance companies certainly definitely and finally determined all the matters embraced in such counterclaims. Though characterized as orders, they are essentially judgments, and conclusive adjudications of the matters embraced in them until reversed. They are final adjudications of a part of the merits involved in the cases, leaving other and very important portions not only not adjudicated but untried. The statute (sec. 2844) provides that "when, in any action, there shall arise issues triable by a jury, and other issues triable by the court, the court shall, in its discretion, direct the trial of the one or the other to be first had, according to the nature of the issues and the interests of justice, and judgment shall be given upon *both* the verdict and the finding of the court, *when both* shall be found. But

Trustees of St. Clara Female Academy vs. Delaware Ins. Co. and others.

no issue need be tried the disposition of which is not neces-
sary to enable the court to render the appropriate judg-
ment." There can be but one final judgment in the case,
and that must dispose of all the issues and the rights of the
parties. *Sellers v. Union L. Co.* 36 Wis. 398; *Scott v. Reese*,
38 Wis. 636; *Singer v. Heller*, 40 Wis. 544; *Treat v. Hiles*,
75 Wis. 265; *Sherman v. Menominee River L. Co.* 77 Wis. 23;
*Gage v. Allen*, 84 Wis. 330. Under our practice there is no
such thing as an interlocutory judgment. *Sellers v. Union
L. Co., supra; Singer v. Heller, supra.* And as was said by
COLE, J., in *Sellers v. Union L. Co., supra:* "The distinction is
broad between an *order* and *judgment*, and they are not to
be confounded in practice." It follows, therefore, that the
judgments here appealed from are erroneous, in that they
cannot be maintained either as orders or as interlocutory
judgments, but are really judgments determining a part only
of the issues and rights of the parties, rendering a further
judgment necessary to a final determination of the rights of
the parties in the actions. R. S. sec. 2882.

In *Mowry v. First Nat. Bank*, 54 Wis. 38, 66 Wis. 539,
there were two judgments. The first determined the rights
of the parties, but provided for a reference to carry out what
had been so adjudged. A part of this judgment was re-
versed, and then the reference proceeded under the corrected
judgment; and, for the amount reported, judgment was
finally given. In *Murray v. Scribner*, 70 Wis. 231, it was
held that a mere interlocutory order for judgment is not ap-
pealable, although it denies the motion of one party for
judgment, and grants that of the other. In *Paetz v. Stop-
pleman*, 75 Wis. 510, as in *Mowry v. First Nat. Bank, supra*,
the so-called interlocutory judgment practically settled and
determined all the rights of the parties, leaving certain sums
under the judgment to be ascertained and adjusted by a ref-
erence. These cases afford no warrant or support to the
judgments before us. The merits of the case, in whole or in

part, cannot be adjudicated or determined by a mere order. This is the appropriate office of a final judgment. Correct practice, and the avoidance of unnecessary expense and delay incident to the adjudication of the rights of the parties in detached parts or portions, require us to adhere quite strictly in the future to the practice referred to by the earlier cases. As the merits in respect to the findings have been fully argued, and considerable expense has been incurred to that end, we have thought it not improper to pass on them, though we might well have stopped by reversing the judgments on the ground last stated, as the court will feel obliged to do as a matter of practice in future cases.

*By the Court.*— The judgment of the circuit court in each of the above cases is reversed, and they are remanded for further proceedings according to law.