Estate of Flierl: Tillmann and another, Executors,
Appellants, vs. Flierl, Respondent.

*May 27—September 14, 1937.*

494

For the appellants there were briefs by *Schanen, Linley & Gerold,* attorneys, and *Victor Linley* of counsel, all of Port Washington, and oral argument by *W. F. Schanen* and *Victor Linley.*

*Albert W. Grady* of Port Washington, attorney, and *Wm. B. Collins* of Milwaukee of counsel, for the respondent.

The following opinion was filed June 21, 1937:

ROSENBERRY, C. J.    The appellants assign as error the striking from the inventory and accounts the two notes executed by Andrew J. Flierl and Barbara Flierl, his wife, in the sums of $600 and $754.63, respectively. The question for decision here is, Does the evidence offered and received upon the hearing sustain the finding of the trial court that the two notes were given without consideration? In its decision, the trial court said:

"The testimony offered by the estate for the purpose of proving consideration is not credible in view of the other testimony and facts and circumstances proved in the case."

So far as the decision discloses the trial court relies very largely upon the alleged alteration of the $600 note. The court said:

"If this note was originally dated April 19, 1913, as claimed by the estate, why did somebody take it upon himself

to alter this note? From all the testimony, facts and circumstances proved in the case I am satisfied that this note was executed about the time when the other note was executed and that it was a sham note without consideration as well as the $754.63 note."

Andrew J. Flierl, the claimant, testified in his own behalf to transactions with his deceased mother. The appellants objected on the ground that he was not a competent witness. The objection was sustained when made. The respondent contends that the appellants opened the door and qualified the witness by introducing "testimony . . . concerning the transaction." Sec. 325.16, Stats. The appellants examined Clem Tillmann, who wrote the note in question, fully in regard to the entire transaction between the testatrix and the respondent. Sec. 325.16. By the introduction of this evidence the appellants removed the incompetency of the witness under the statute, and the claimant was entitled to testify to the whole of that transaction. *Estate of Gilbert* (1918), 167 Wis. 291, 166 N. W. 442, 167 N. W. 447. The executors claim that the respondent first introduced testimony in regard to these transactions. Mr. Schanen was examined as a witness by the respondent. But that examination related to matters occurring after the death of the testatrix. The executors first introduced testimony in regard to the transaction which resulted in the execution and delivery of the notes.

We now consider the evidence. The notes in question were found in the handbag of the deceased, tied together with thread, and were apparently kept by the testatrix along with her other securities. The testatrix made a will in 1926. This will contained a provision similar to the one contained in the will executed in 1929, providing—

"The amounts due me at the time for my death from my said children as represented by their several notes, together with accrued interest, is to be deducted from their respective share."

Mr. Schanen came to the home of the testatrix for the purpose of drafting this will. There were present on that occasion the testatrix, Mr. Schanen, Clem Tillmann, Christina Tillmann, Clem Tillmann, Jr., and Andrew J. Flierl. It is undisputed that Andrew J. Flierl was present during the entire time both while directions were given to the scrivener and when the will was read by Mr. Schanen to Mrs. Flierl. The testimony of the others, to the effect that the mother mentioned these notes along with other securities which she had in her possession and directed the scrivener to include a clause directing that these and other notes be deducted from the amounts due the legatees stands uncontradicted.

Andrew J. Flierl admits that he was present, but says that he did not hear his mother mention the notes and direct that they be deducted from the shares of the estate, and thinks he would have heard it if it was said. If, as he says, he had expected that the note and chattel mortgage would be destroyed after he made the settlement with his creditors in 1915, he should have been very much surprised that the documents were still in her possession and were to be deducted from his share of the estate. The fact that he made no protest is very significant. After his mother's death, on several occasions according to the testimony of other witnesses, the matter of including the notes in the assets of the estate was discussed. At first he raised no objection to the $600 note, but was in doubt about the note for $754.63. At no time prior to the filing of his petition did he set up that the notes were without consideration. He evidently became satisfied with respect to the execution of the $754.63 note and mortgage, but thought that they should not be included in the inventory. While the evidence is not clear, apparently he declined to sign the petition for final accounting for that reason. If, as he now claims, both the notes were part of a scheme to enable him to escape claims

of creditors and were not to constitute subsisting obligations, it seems strange that that was not at once put forward by him when the discussion with reference to including them as a part of the assets of the estate began. In addition to that, his denials are weak and uncorroborated. In fact, the circumstances so far as they are probative at all tend to show that he had reason for borrowing the money both in 1913 and in 1915.

No explanation is given with reference to the alleged alteration of the notes. It does not appear to have been done by the testatrix. Whoever did it, did a very clumsy job, for the reason that the $600 note is by its terms payable one year after date, which was April 19, 1913. In the place for the due date in the line below it is indicated as payable on the date on which it was given. Whether the note was originally dated April 19, 1913, or April 19, 1915, is not very material so far as the merits of this controversy are concerned. Andrew J. Flierl admits the making and delivery of both notes and the chattel mortgage securing the note for $754.63. The indebtedness in either event was evidenced by a note, and according to the terms of the will is to be deducted from his share of the estate.

Andrew J. Flierl claims that the notes were given to keep his creditors off. If, as he claims, the $600 note was given in April, 1915, it is difficult to see what effect it would have in that regard in view of the fact that about a month before he had given a chattel mortgage on his property to secure the payment of the note for $754.63. It does not appear that anyone outside of the family knew anything about the note for $600.

Andrew J. Flierl claims that during his mother's lifetime he was on good terms with her, saw her, and if the notes were sham, it is a significant circumstance that he never asked for their surrender and cancellation prior to her death,

and now nearly twenty years after the transaction claims they were without consideration. Some attempt was made to corroborate the testimony of the petitioner by the production of bankbooks, files, etc., but the testimony in that regard was weak and inconclusive.

The file relating to the matter of settlement with Andrew J. Flierl's creditors was in the possession of Joseph Collins, the attorney who had charge of the matter, now deceased. While other papers from his office were found, this file was missing.

Neither the trial court nor counsel gave very much consideration to the fact that the petition of Andrew J. Flierl to have the note stricken from the inventory and that it be not charged against his share of the estate was equivalent to an action in equity to set aside and cancel the instruments. The notes themselves were presumed to have been issued for a valuable consideration. Sec. 116.29, Stats.

In a case involving a cancellation of a written stipulation, the court said:

"Evidence to impeach an instrument thus found in the possession of the adverse party, ought to be as clear and unequivocal as that required by law to establish mistakes in such instruments." *Cameron v. Cameron* (1862), 15 Wis. 1, 8.

To reform a written instrument on the ground of mistake, the proof must be clear, convincing, and satisfactory. *Evans v. Evans* (1921), 173 Wis. 141, 179 N. W. 755. See *Hoeft v. Kennedy* (1934), 214 Wis. 187, 252 N. W. 589.

We perceive no reason why the *quantum* and sufficiency of proof necessary to establish want of consideration in a promissory note should not be at least as great as that required to establish a mistake.

It is considered that upon the whole record the petitioner failed to establish the allegations of his petition by clear,

satisfactory, and convincing evidence, not only that, but the evidence clearly preponderates in favor of the executors. While there was some conflict in the testimony given by the Tillmanns, it is nothing more than should be expected after the lapse of eighteen years. We find nothing in the testimony on behalf of the executors either improbable or unreasonable. An attempt is made to enlarge upon the fact that the money was paid in cash instead of by check, but the evidence shows that the testatrix kept considerable sums in her possession.

It is also contended by the petitioner that the statute of limitations having run against the notes in question, they were not "due" to the mother at the time of her death and therefore not within the clause of the will which provides:

"The amount due me at the time for my death, from my said children as represented by their several notes together with accrued interest to be deducted from their respective shares so bequeathed to them in this my will."

In *Estate of Weiss* (1937), 224 Wis. 192, 271 N. W. 918, the language of the will was:

"Provided, however, that the indebtedness of any child to me, evidenced by note or notes, shall be deducted from his or her share."

The circumstances in that case are almost identical with the circumstances in this case except that in the present case the words: "Due me at the time for my death" are used, whereas in the Weiss will the words were: "The indebtedness of any child to me, evidenced by note or notes." In the *Weiss Case*, as in this case, no interest nor principal ever having been paid, an action on the notes was barred by the statute of limitations. In this case the inventory included a mortgage note for $1,700 given by C. W. Tillmann and Lillian C. Tillmann, dated October 15, 1908, on which the interest had been paid to October 15, 1932; a note for $500

dated January 12, 1931, given by the Tillmanns to the testatrix on which interest had been paid to January 12, 1932; a mortgage note dated September 6, 1921, executed by the Tillmanns for $2,000, on which a part of the principal had been paid and interest to November 19, 1932; a note executed by Theodore Flierl, a son of the testatrix, for $300, dated February 1, 1911; and the two notes in question. With the exception of the note given in 1931, these securities were kept by the testatrix in her handbag, and were produced at the time of the drafting of the will in 1926. For the reasons stated in the *Weiss Case,* the intention of the testatrix to have the notes in question deducted from the share of Andrew J. Flierl seems clear and explicit. The mother clearly intended by her will that sums advanced to her children, which advancements were evidenced by notes, should be treated as a part of her estate and deducted from the respective shares of her children. Thus all children would be treated alike.

It is considered that the great weight and clear preponderance of the evidence, after giving due consideration to the testimony of the experts and all of the circumstances, support the conclusion that the $600 note was signed April 19, 1913.

*By the Court.*—That part of the judgment appealed from is reversed, and the cause remanded with directions to proceed with the distribution of the estate by the inclusion of the notes in the inventory and the deduction of the amount of the notes from the share of Andrew J. Flierl as directed in the will.

A motion for a rehearing was denied, with $25 costs, on September 14, 1937.