NOORTHOEK *v.* PREFERRED AUTOMOBILE INS. CO.

1. AUTOMOBILES—CERTIFICATE OF TITLE—STATUTES—OWNERSHIP.

Under statute relative to titles of automobiles, it is contemplated that both the original license plates and duplicates thereof may be furnished by the secretary of State only when a certificate of title is issued, that the owner is the one who has the certificate of title in his name, and that title follows the certificate of ownership, hence the intention on the part of either or both transferor and transferee of title that actual title would remain in the transferor could not be given effect (1 Comp. Laws 1929, § 4658 *et seq.*, as amended by Act No. 65, Pub. Acts 1931, and Act No. 160, Pub. Acts 1935).

2. SAME—SALES—STATUTES.

A sale or transfer of the title to an automobile in violation of the statute relative to issuance of certificates of title thereto is void (1 Comp. Laws 1929, § 4658 *et seq.*, as amended by Act No. 65, Pub. Acts 1931, and Act No. 160, Pub. Acts 1935).

3. INSURANCE—LIABILITY COVERAGE FOR FLEET OF AUTOMOBILES—REFORMATION OF INSTRUMENTS.

Where policy of liability insurance on fleet of automobiles was issued to a lumber company but title to automobile involved in accident was issued to plaintiff individuals, the policy may not be reformed under existing regulations by commissioner of insurance so as to enable recovery to be had under the policy, where there was no fraud involved in the issuance of the policy (1 Comp. Laws 1929, § 4658 *et seq.*, as amended by Act No. 65, Pub. Acts 1931, and Act No. 160, Pub. Acts 1935).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 2, 1940. (Docket No. 32, Calendar No. 40,861). Decided March 15, 1940. Rehearing denied June 18, 1940.

Bill by Adrian M. Noorthoek and wife against Preferred Automobile Insurance Company, a Michi-

gan corporation, to reform an insurance policy. Decree for plaintiffs. Defendant appeals. Reversed.

*Annis & Cooper,* for plaintiff.

*Harry E. Rodgers* and *John D. B. Luyendyk,* for defendant.

POTTER, J. Dulcie Moore began suit against Adrian M. Noorthoek and wife for personal injuries claimed to have been suffered by her as the result of being struck by an automobile driven by Adrian M. Noorthoek. A verdict and judgment on behalf of plaintiff in that case was affirmed by this court in *Moore* v. *Noorthoek,* 280 Mich. 431.

Defendant herein, claiming the title to the automobile in question was in Noorthoek and wife and the policy in the name of the Riverside Lumber Company, refused to pay the policy, whereupon plaintiffs brought suit against defendant to reform the policy. From a decree for plaintiffs, defendant appeals, claiming the court erred in rendering a decree for plaintiffs and in not rendering one for defendant under the pleadings and proofs, and for other reasons. Plaintiffs claim the trial court was right in holding defendant liable to them, and in holding that the rulings of the insurance department did not avoid the policy in question.

At the time the original policy was issued by defendant through Mr. Kosten, its agent, to plaintiffs in 1930, the definition of what constituted a fleet was:

"Five or more automobiles or trucks, owned and operated by an individual, partnership or corporation shall constitute a fleet, with the exception that a car or truck privately owned, but used in the business of this individual, partnership or corporation may be included in this fleet for liability and prop-

crty damage only, provided the premiums are paid by such individual, partnership or corporation.''

Subsequently, July 24, 1934, the commissioner of insurance rescinded the above definition of an automobile fleet, substituting therefor the following:

"Five or more automobiles or trucks owned and operated by an individual, partnership, or corporation shall constitute a fleet."

This ruling provided further:

"The elimination of privately owned vehicles from the previous definition has been occasioned by a disregard of the former ruling by certain companies. This disregard of the ruling has brought about an unfair advantage gained by certain owners, which advantage can be properly said to be discriminatory, and the savings experienced by a few is viewed by this department as a form of rebating which is not contemplated as permissible by statute."

The original policy was issued in 1930 but from time to time thereafter changes were made in the automobiles covered thereby.

The agent of the insurance company, Mr. Kosten, testified that he told Noorthoek "we could no longer give fleet rates unless those titles were all in the same name," and that "he said that could be arranged, so I took it for granted" that it was arranged. The trial court said:

"So far as the facts are concerned in this cause, that there was neither fraud, mistake nor misunderstanding between the parties to this cause. * * * If the defendants through their agent were attempting to do anything by the representations or notice given by the agent to the insured, it was for the sole purpose of avoiding the strict meaning of the order of the commissioner of insurance of July, 1937. The

agent proposed a process to be followed, whereby the record title would appear in the name of the Riverside Lumber Company and yet the actual title and ownership should remain in the individuals the same as before."

Act No. 46, Pub. Acts 1921 (1 Comp. Laws 1929, §§ 4658–4676), as amended by Act No. 65, Pub. Acts 1931, and Act No. 160, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 4659 *et seq.*, Stat. Ann. §§ 9.1471–9.1491), is entitled:

"An act to protect the title of motor vehicles within this State; to provide for the issuance of certificates of title and evidence of registration thereof; to regulate purchase and sale or other transfer of ownership; to facilitate the recovery of motor vehicles stolen or otherwise unlawfully taken; to provide for the regulation and licensing of certain dealers in used and second hand vehicles as herein defined; to prescribe the powers and duties of the secretary of State hereunder; and to provide penalties for violation of the provisions hereof."

Section 2 of that act provides:

"After July one, nineteen hundred twenty-two, no certificate of the registration of any vehicle or number plates therefor, whether original issues, or duplicates, shall be issued or furnished by the secretary of State unless the applicant therefor shall at the same time make application for and be granted an official certificate of title, or unless such a certificate covering such motor vehicle has been previously issued to the applicant."

Section 3 of the act provides for the transfer of motor vehicles from one person to another, and that

"The holder of such certificate shall indorse on the back of same an assignment thereof with warranty of title in the form printed thereon with a statement of all liens or incumbrances on said motor

vehicle, sworn to before a notary public or some other person authorized by law to take acknowledgments, and deliver the same to the purchaser or transferee at the time of the delivery to him of such motor vehicle, which shall show the payment or satisfaction of any mortgage or lien as shown on the original title."

The statute, in section 4 (as amended by Act No. 65, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 4661]), also provides that any person who shall operate a motor vehicle in this State after July 1, 1922, "without securing a certificate of title, as herein provided, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than ten dollars nor more than one hundred dollars or by imprisonment in the county jail for a period not to exceed ninety days, or both such fine and imprisonment at the discretion of the court." It provides that any person who sells a motor vehicle without complying with the requirements of section 3 of the statute "shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than ten dollars or more than one hundred dollars or by imprisonment in the county jail for a period not to exceed ninety days, or both such fine and imprisonment at discretion of the court."

The statute also contains provisions covering perjury in connection with the transfer of titles, forgery of certificates of title, recovery of cars stolen, and for other purposes.

Whether either or both of the parties intended the record title would appear in the Riverside Lumber Company and yet the actual title and ownership would remain in the individuals the same as before, such intention could not be given effect. The applicable statute clearly contemplates that both the

original license plates and duplicates thereof may be furnished by the secretary of State only when a certificate of title is issued. The owner of an automobile within the contemplation of the law of this State is the person who has the certificate of title thereto. A person is the owner of an automobile when the title is registered in his name. Title follows a certificate of ownership. A license to operate an automobile may be delivered only when a certificate of title has been issued. [*]

In *Hogadone* v. *Grange Mutual Fire-Insurance Co.*, 133 Mich. 339, it was held the execution of a deed which was not delivered, where there was no intention that title should pass, did not constitute a breach of condition of a fire policy against any change of title or ownership of the property insured. It was said:

"According to the finding of facts, though the deed was recorded, it was never delivered, and plaintiff did not intend that the title should pass. Under these circumstances the title would not pass. * * * Subsequently, while under the examination of his own counsel, however, plaintiff testified that he did not intend to give his wife the place and release his claim to it; that his sole and only purpose was to make the record title appear out of his name, for the purpose of frightening off or warding off an unjust claim; that he handed the deed to the register of deeds to change the record, and that he did not understand the difference between the record title and the actual title. While this testimony would have warranted the finding that there was an intent to pass the title, it is equally clear that, considered with the other facts found,—*viz.*, plaintiff's desire to deceive his creditors, and at the same time keep the property,—it justified the court in refusing to make that finding."

---

[*] See 1 Comp. Laws 1929, § 4632 *et seq.* (Stat. Ann. § 9.1431 *et seq.*).—Reporter.

There is nothing in that case that affects the question here involved.

The transfer by registration of the titles to automobiles was provided for in Act No. 46, Pub. Acts 1921, to get rid of subterfuges of the kind and character involved in *Hogadone* v. *Grange Mutual Fire-Ins. Co., supra.* It makes the owner of an automobile the holder of the record title. The record title of an automobile is in the holder of the certificate of ownership. *Endres* v. *Mara-Rickenbacker Co.*, 243 Mich. 5. A sale or transfer of the title to an automobile in violation of the provisions of this act is void: *Ittleson* v. *Hagan*, 245 Mich. 56, where a contract between the parties was held void because one of them failed to comply with the mandatory requirements of the statute in transferring title; *Bos* v. *Holleman DeWeerd Auto Co.*, 246 Mich. 578, where one who bought a car but was unable to get the title was held entitled to rescind the sale and recover his money back; *Kelly* v. *Lofts*, 253 Mich. 552, which held there could be no rescission of a contract by defendant unless he tendered to the plaintiff a certificate of title to the automobile properly indorsed; *Schomberg* v. *Bayly*, 259 Mich. 135, where it was said that until the delivery of the signed certificate title does not pass and no sale results; *Kruse* v. *Carey*, 259 Mich. 157, where it was said the cases seem plainly to indicate that title passes upon delivery of a properly executed assignment of title, and not before; and *Kimber* v. *Eding*, 262 Mich. 670, where a sale was actually agreed upon and the prospective purchaser was operating the automobile at the time of an accident, and it was held that in cases involving actions for negligent injuries, as well as controversies between the immediate parties to a sale, title to a motor vehicle passes from the seller to the purchaser when the former delivers to the

latter an assignment of certificate of title, and not before.

The policy of insurance was issued in the name of the Riverside Lumber Company. The title to the automobile was in the name of plaintiffs. In the absence of fraud, there can be no recovery against the insurance company upon a policy issued in the name of the Riverside Lumber Company when title and certificate of ownership were held elsewhere.

Decree reversed and bill dismissed, with costs.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred. McALLISTER, J., did not sit.