Jewell and wife, Respondents, v. United Fire & Casualty Company, Appellant.

*October 26—November 24, 1964.*

510

511

512

For the appellant there was a brief by *Allan & Storck* of Mayville, and oral argument by *Robert E. Storck*.

For the respondents there was a brief and oral argument by *Dorothy Walker* of Portage.

GORDON, J.   "Names were made to matter," said Thomas Reed Powell, 60 Harvard Law Review (1947), 501, 503.

This case revolves upon an incorrect name used in an insurance policy.  The trial court found that there was a mutual mistake which required that the policy be reformed by changing the name of the insured from Gordon Jewell to Audrey Jewell.

The appellant has undertaken to establish that this determination on the part of the trial court was against the great weight and clear preponderance of the evidence. It contends that there was not clear and convincing evidence to warrant the reformation and that Mr. and Mrs. Jewell undertook a fraudulent scheme which should foreclose them from equitable relief.

The filling station was primarily owned and operated by Gordon Jewell. On the other hand, Audrey Jewell had a minor financial investment in the filling station and, therefore, an insurable interest under the policy.

The appellant urges that there was fraud in the manner in which the title to a 1959 Buick was transferred from the joint ownership of Gordon and Audrey Jewell to Audrey Jewell alone. An uncashed check passed from the insurance agent, Mr. Hillestad, to Mr. Jewell, and another passed from Mrs. Jewell to Mr. Hillestad; this is relied upon as demonstrating that both Gordon and Audrey Jewell were in league with Mr. Hillestad in accomplishing a collusive transfer.

In addition, the appellant points out that no protest was voiced concerning the name placed upon the policy at the time it was received; it was not until after an accident had occurred and it had become advantageous to have the coverage in the name of Mrs. Jewell that a demand for reformation was made.

The trial judge analyzed the factors mentioned above and explained why he declined to give them conclusive effect. There is persuasive evidence in the record to demonstrate that the transfer of the garage liability insurance from Fidelity to United was actually intended to continue the coverage in the name of Audrey Jewell. It is undisputed that Mr. Hillestad is the one who initiated the transfer of the insurance from the one company to the other; he was terminating his agency relationship with Fidelity, and it

was he who proposed that the policies be reissued by United. The respondents sought no apparent gain by changing companies; they did so only to accommodate their insurance agent, Mr. Hillestad.

There is nothing in the record to suggest that in changing companies the respondents intended to change the coverage. Indeed, the evidence is forcefully to the contrary. At the time that the transfer between the two companies was made, there were in existence riders to each of the Fidelity policies which had changed the name of the assured from Gordon Jewell to Audrey Jewell. When discussions were held between Mr. Hillestad and Mr. Helms, the former specifically informed the latter that the ownership of the automobiles was in Mrs. Jewell's name. This fact was never disputed by the appellant; no contrary evidence was introduced, even though it appears that Mr. Helms was in attendance at the trial.

While there is some dispute on the point, it would appear that when Mr. Hillestad sent the so-called "dailies" to United he included the riders which showed that the policies were in the name of Audrey Jewell. Exhibit 13, which was taken from the underwriting file at the home office of United, includes the written name of Audrey Jewell; the record contains no explanation as to how her name could have found its way into the appellant's file unless it had in fact appeared in the riders which accompanied the "dailies."

The trial court found that it was intended that the United policy be the same as the previous coverage and, therefore, that Mrs. Jewell was to continue as the named insured. This result is irresistible from Mr. Hillestad's uncontradicted testimony. In addition, Mr. Fattig, representing United's home office, also made it clear that he intended to issue the policy identically with the "dailies." Thus, we believe that the trial court was correct in concluding that there was a

mutual mistake of fact which justified the reformation of the insurance contract.

The fact that Gordon Jewell was the owner and operator of the filling station and also the fact that he had transferred the title to the automobiles do not bar reformation of the policy. The appellant has referred us to *Noorthoek v. Automobile Ins. Co.* (1940), 292 Mich. 561, 291 N. W. 6. In that case, reformation was denied because the title to the automobile was changed so that advantage could be taken of lower insurance rates; in the instant case, the change in title was not designed to gain any advantage from the appellant insurer.

A court will not reform a document to abet a fraudulent scheme. *Moore v. Michaelson* (1913), 152 Wis. 352, 358, 140 N. W. 28. However, the previous title transfer between Gordon and Audrey Jewell falls far short of being fraud with regard to the policy in issue, even if it could be found to constitute a violation of sec. 341.60, Stats. "Fraud is infinite in variety," said Lord MacNaughten; "sometimes it is audacious and unblushing; sometimes it pays a sort of homage to virtue, and then it is modest and retiring; it would be honesty itself if it could only afford it." *Reddaway v. Banham* [1896], A. C. 199, 221. It is one thing to be aware or suspicious of the many forms which fraud can take; it is another thing to find it proved.

"Fraud generally lights a candle for justice to get a look at it," goes the saying. Because it was a colorable transaction, the trial judge carefully considered the 1961 title transfer in his memorandum decision. We have also scrutinized the matter closely and support the conclusion reached by Judge O'Connor.

The alleged scheme of Mr. and Mrs. Jewell took place in 1961, long before the appellant issued the policy in question

in May, 1962. In *Huntzicker v. Crocker* (1908), 135 Wis. 38, 41, 115 N. W. 340, this court stated:

"Equity does not demand that its suitors shall have led blameless and pure lives. If it did, the chancellor's court would be little frequented. The general principle simply is that he who has been guilty of substantial misconduct 'in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties and arising out of the transaction,' shall not be afforded relief when he comes into court as an actor seeking to set the judicial machinery in motion."

The fact that the agent, as well as Mr. Jewell, accepted the policy as it was written by United does not defeat this action for reformation. In *Jeske v. General Accident Fire & Life Assur. Corp.* (1957), 1 Wis. (2d) 70, 92, 83 N. W. (2d) 167, this court said:

"We are thus constrained to hold that Jeske's failure to have read or to have known the terms of his policy cannot defeat his action for reformation of the policy."

This interpretation related to a technical clause in the policy, and it would seem to be less applicable when the error to be reformed is as obvious as the name of the insured. Nevertheless, we do not regard the failure to observe the identity of the named insured to be fatal as a matter of law in an action for reformation. See also *Barly v. Public Fire Ins. Co.* (1931), 203 Wis. 338, 344, 234 N. W. 361; *Journal Co. v. General Accident Fire & Life Assur. Corp.* (1925), 188 Wis. 140, 149, 205 N. W. 800; *Collum v. National Fire Ins. Co.* (1923), 181 Wis. 425, 427, 195 N. W. 333. But see *Parsons, Rich & Co. v. Lane* (1906), 97 Minn. 98, 106 N. W. 485, 4 L. R. A., p. 231, Note 5.

In the case at bar, there was the clear and convincing proof required to reform a written instrument on the ground of mutual mistake. *Estate of Flierl* (1937), 225 Wis. 493,

499, 274 N. W. 422; *Evans v. Evans* (1921), 173 Wis. 141, 179 N. W. 755. Less proof is required to establish mutual mistake in connection with an insurance contract than is needed as to other written instruments. *Jeske v. General Accident Fire & Life Assur. Corp.* (1957), 1 Wis. (2d) 70, 79, 83 N. W. (2d) 167; *Center Street Fuel Co. v. Hanover Fire Ins. Co.* (1956), 272 Wis. 370, 373, 75 N. W. (2d) 462.

In *Pouwels v. Cheese Makers Mut. Casualty Co.* (1949), 255 Wis. 101, 106, 37 N. W. (2d) 869, this court stated as follows:

"It is well established that when clear and satisfactory evidence demonstrates that through inadvertence, accident, or mistake the terms of a contract of insurance are not fully or correctly set forth in the policy, it may be reformed in equity so as to express the actual contract intended by the parties. See 29 Am. Jur., Insurance, p. 237, sec. 241; *Wisconsin Auto Racing Asso. v. Home Ins. Co.* (1934), 216 Wis. 321, 257 N. W. 7; *Fountain v. Importers & Exporters Ins. Co.* (1934), 214 Wis. 556, 252 N. W. 569; *Schmidt v. Prudential Ins. Co.* (1940), 235 Wis. 503, 292 N. W. 447."

*By the Court.*—Judgment affirmed.