# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2085

PROTECTIVE LIFE INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

MEGAN HANSEN,

*Defendant-Appellant,*

*v.*

B&K ENTERPRIZES,

*Defendant-Appellee,*

and

ROBERT K. STEUER, as Assignee of
B&K Enterprizes,

*Intervenor-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 1:08-cv-00312-WCG—**William C. Griesbach,** *Judge.*

ARGUED SEPTEMBER 29, 2010—DECIDED JANUARY 19, 2011

Before BAUER, WOOD and WILLIAMS, *Circuit Judges*.

BAUER, *Circuit Judge*.    Upon the death of Richard McDonald, Protective Life Insurance Company ("Protective") filed this interpleader action, naming both Megan Hansen and B&K Enterprizes ("B&K") as defendants. Hansen and B&K filed cross motions for summary judgment, each claiming to be the beneficiary of McDonald's one-million-dollar life insurance policy. The district court granted summary judgment in favor of B&K, and Hansen appealed. We have reviewed the district court's decision de novo, construing all facts and reasonable inferences in Hansen's favor. Finding no error, we affirm.

## I.  BACKGROUND

B&K is a Wisconsin limited liability company ("LLC") that developed, built, owned, and operated a gas station and convenience store in Manitowoc, Wisconsin. McDonald was a founding member of the LLC, and he was also the manager and day-to-day operator of the station. Because lenders considered McDonald to be a "key man," B&K was able to finance its operations by purchasing a one-million-dollar life insurance policy on McDonald's life and then assigning its interest in the insurance proceeds as security for various loans.

In 2007, McDonald's personal life was in disarray. He was in the midst of a divorce while living in a motel and dating Hansen, a friend of his ex-wife's daughter. His professional life was not faring much better. B&K was

operating at a loss and members of the LLC suspected that McDonald was mismanaging the company. Confirming the members' suspicions, an audit of B&K's books revealed that McDonald appropriated $48,351.85 of B&K's funds, some of which was used to purchase items for Hansen and Hansen's brother.

Although B&K quickly removed McDonald as the manager of the station, his actions financially ruined the company. The members therefore hired Michael Culligan to wind up B&K and liquidate its assets, including the life insurance policy. At the time of liquidation, the policy had been paid through March 1, 2008, and although it had a cash surrender value of $217.50, B&K decided to dispose of the policy by simply letting it lapse. However, unbeknownst to B&K, Culligan signed and submitted a change of ownership form to Protective in January 2008, essentially asking it to immediately transfer ownership of the policy from B&K to McDonald. Subsequently, while believing himself to be the new owner of the policy, McDonald signed and submitted a change of beneficiary form in order to change the beneficiary of the policy from B&K to Hansen. McDonald then committed suicide.

According to Protective's terms and requirements, the owner of a life insurance policy may transfer ownership of the policy by signing and submitting a change of ownership form. However, while an LLC may submit this form with only one officer's signature, a corporation must submit this form with at least two corporate officers' signatures. Although B&K was unquestionably an LLC, the owner named on the policy

was incorrectly recorded as "B&K Inc." Thus, following its own policies, when Protective received the change of ownership form signed only by Culligan, it sent the form back to Culligan and explained that he would need to obtain the signature of another corporate officer and resubmit the form in order to transfer ownership of the policy. For unknown reasons, Culligan never did so. As a result, Protective never changed the owner of the policy.

Protective's terms and requirements also provided that only the owner of a policy can change the beneficiary of the policy. Thus, McDonald's attempt to change the beneficiary from B&K to Hansen is only effective if McDonald was the owner of the life insurance policy when he submitted the change of beneficiary form.

B&K is currently in receivership. The liquidation of B&K's assets did not generate enough proceeds to pay its secured debt, and all members of the LLC were therefore compelled to make substantial cash contributions to help pay off the debt. Although McDonald was still a member of the LLC and owned the largest portion of the LLC at the time of liquidation, he refused to make any cash contributions, thereby forcing other members to cover his share. The record reveals that non-member creditors currently have claims totaling approximately $83,000, while members have claims totaling approximately $400,000.

Upon Hansen's and B&K's cross motions for summary judgment, the district court entered judgment in favor of B&K. Hansen appealed, claiming that McDonald owned the policy and that Hansen is the rightful beneficiary of the policy.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo, construing all facts and reasonable inferences in Hansen's favor. *Winsley v. Cook County*, 563 F.3d 598, 602 (7th Cir. 2009); *Milwaukee Metro. Sewerage Dist. v. Am. Intern. Specialty Lines Ins. Co.*, 598 F.3d 311, 316-17 (7th Cir. 2010). Summary judgment in favor of B&K is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that B&K is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). Both parties agree that we should apply Wisconsin state law because a federal court sitting in diversity applies the substantive law of the state in which it is sitting. *See, e.g., Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004).

### A. B&K Is the Owner and Beneficiary of the Life Insurance Policy

Although Protective's records indicate that B&K is the owner and beneficiary of the policy, Hansen contends that in January 2008 McDonald became the owner of the policy and Hansen became the beneficiary of the policy. She reaches this conclusion by setting forth a series of interlocking arguments, which proceed as follows: (1) B&K and Protective made a mutual mistake when they named "B&K Inc" the owner of the policy, and we should reform the policy to read "B&K LLC" in order to reflect the contracting parties' true intentions; (2) after reforming the policy to read "B&K LLC," we should find that Culligan transferred ownership of the

policy from B&K to McDonald because an LLC may transfer ownership of its policy by submitting a change of ownership form that bears only one officer's signature; and (3) after finding that McDonald owned the policy, we must find that Hansen is the beneficiary of the policy because McDonald, as the owner of the policy, had the authority to name Hansen as the new beneficiary. Alternatively, should we reject this series of arguments, Hansen contends that McDonald owned the policy because B&K and McDonald formed a binding contract to transfer ownership of the policy, and Hansen can enforce this contract because she is an intended third-party beneficiary. We address each of these arguments in turn.

Hansen begins her series of interlocking arguments by asserting that B&K and Protective made a mutual mistake when they named "B&K Inc" the owner of the policy and that we should reform the contract to read "B&K LLC" in order to reflect the true intention of B&K and Protective. Under Wisconsin law, a contract may be reformed "when the writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake as to the contents or effect of the writing." *Addison Ins. Co. v. Korsmo*, 694 N.W.2d, ¶ 11 (Wis. Ct. App. 2005) (citing *Vandenberg v. Cont'l Ins. Co.*, 628 N.W.2d 876, 829 (Wis. 2001)). Establishing the existence of a mutual mistake in an insurance contract, however, requires less proof than is needed for any other contract. *Jewell v. United Fire & Cas. Co.*, 131 N.W.2d 276, 280 (Wis. 1964). Putting our concerns with standing aside, we will assume without de-

ciding that reforming the contract to read "B&K LLC" is proper.

Hansen next contends that once we reform the contract to read "B&K LLC," we must find that Culligan transferred ownership of the policy to McDonald. For support, Hansen relies upon Kathleen Britton, the vice president in charge of Protective's life insurance policies, who testified that if B&K had been properly listed as an LLC, then Culligan's signature alone would have satisfied Protective's terms and requirements. In effect, therefore, Hansen urges us to find that McDonald was the owner of the policy because B&K *should* have been listed as an LLC and Protective therefore *should* have accepted Culligan's signature as sufficient to transfer the policy. The problem with Hansen's argument is that we have no authority to do so.

We begin by noting that we cannot presume to know what Protective would or should have done if B&K had been listed as an LLC. Although Protective's terms and requirements were clear, there is nothing in the record to suggest that transferring ownership of *this* policy would have been a simple ministerial task. Hansen's reliance upon Britton's testimony is misplaced because although Britton testified about Protective's general business practices and about whether Culligan's signature satisfied Protective's terms and requirements for LLCs, she never testified that Protective would have actually transferred ownership of the policy from B&K to McDonald if B&K had been listed as an LLC. There is in fact nothing in the record to prevent

us from assuming that instead of transferring the policy, Protective would have commenced an investigation or otherwise refused to transfer ownership of the policy. Hansen's assumption about what would have happened is thus nothing more than speculation, and we have no reason to believe that Hansen's assumption is more correct than any other assumptions that could be made.

Nevertheless, even if we could somehow discover what Protective would have done had B&K been named an LLC, the proper focus here is not on what should have happened but rather on what actually happened. Hansen argues that because Protective should have accepted Culligan's signature as sufficient to transfer ownership of the policy, we must find that B&K transferred the policy to McDonald. This is not a legal theory, and "what should have happened" is not a governing standard. Instead, what matters here is what actually happened: Culligan signed a change of ownership form, Protective rejected it either rightly or wrongly (we will presume wrongly) and sent the form back to Culligan, Culligan never mailed the form back, and Protective never changed the owner of the policy. Absent some viable legal theory, we cannot simply unwind this series of events and declare Hansen the beneficiary of the policy.

To the extent Hansen argues that we can reform the contract twice, first to make B&K LLC the owner and then to make McDonald the owner, we reject this argument. Although reformation may change "B&K Inc" to "B&K LLC," it certainly does not change the owner

from "B&K" to "McDonald." Reformation is an equitable remedy that is available only when a document fails to fully or accurately reflect the contracting parties' actual agreement either because the contracting parties made a mutual mistake or because one party made a mistake while the other party committed a fraud. *See, e.g.*, *Hoem v. Town of Franklin*, 774 N.W.2d 475, ¶ 15 (Wis. Ct. App. 2009); *Korsmo*, 694 N.W.2d at ¶ 9 (stating that "reformation is an equitable remedy. If the circuit court determines [that] . . . the terms of an insurance contract are not fully or accurately set forth, it may, at its discretion, reform the contract to express the parties' actual intent"). Here, B&K and Protective intended to create a contract that named B&K as both the owner and beneficiary of a life insurance policy on McDonald's life. They succeeded in doing so. While the contracting parties might have made a mistake in characterizing B&K as a corporation, Hansen does not allege that the contracting parties made any additional mistakes or that one party made a mistake while the other party committed a fraud. There is thus nothing left to reform. Because Hansen points to no legal theory under which we could find that McDonald was the owner of the policy, Hansen's series of interlocking arguments fail.

At oral argument, however, Hansen argued that even if we reject her series of arguments, we should still find that McDonald was the owner of the policy because B&K and McDonald formed a binding contract to transfer ownership of the policy, and Hansen can enforce this contract because she was an intended third-party beneficiary. We disagree. First, assuming the change of owner-

ship form was a contract, it was a contract between B&K and Protective. McDonald was not a party to this contract because he had no control over the contents of the form, whether B&K would submit the form, or whether Protective would find the form sufficient. Because McDonald was not a party to this contract, Hansen has no authority to enforce it. Second, there is no evidence in the record proving that Hansen is an intended third-party beneficiary. In Wisconsin, "A person may enforce a contract as third-party beneficiary if the contract indicates that he or she was either specifically intended by the contracting parties to benefit from the contract or is a member of the class the parties intended to benefit." *Milwaukee Area Technical Coll. v. Fronteir Adjusters of Milwaukee*, 752 N.W.2d 396, ¶ 20 (Wis. Ct. App. 2008). Here, even if the change of ownership form was a contract between B&K and McDonald, it made no mention of Hansen or any other beneficiary; it was merely a contract to transfer ownership of the policy. It is thus impossible to conclude that Hansen was an intended third-party beneficiary who is entitled to enforce the contract.

Accordingly, for the reasons set forth above, we find that B&K is both the owner and the beneficiary of the life insurance policy. We therefore affirm summary judgment in favor of B&K. Given our holding, we need not address B&K's arguments that McDonald did not give adequate consideration and that Culligan did not have authority to transfer the policy.

### B. The Equities Favor B&K

The district court held that even if Hansen had satisfied all elements of reformation, reformation would nevertheless be improper because the equities do not lie in Hansen's favor. We agree.

B&K purchased a one-million-dollar life insurance policy on McDonald's life as a way to finance its business. It paid the premium on this policy for four years. Meanwhile, McDonald was a dishonest employee who exploited his position in the company and misappropriated B&K's funds. In an effort to swindle even more from B&K, McDonald attempted to transfer ownership of the policy from B&K to himself so that he could make Hansen the beneficiary of the policy before he killed himself. Although Hansen denies any knowledge of McDonald's planned suicide, the evidence on the record strongly suggests otherwise. And while creditors who invested in B&K remain unpaid, Hansen seeks a windfall in the amount of one million dollars from the very policy which was purchased in order to protect the creditors. She does so despite the fact that she never had any connection with B&K's business, despite the fact that neither McDonald nor Hansen ever paid any insurance premium on the policy, and despite the fact that her relationship with McDonald was apparently over at the time of his death. Given the record before us, there is no doubt that the equities favor B&K and its creditors. We therefore affirm summary judgment in favor of B&K. *See, e.g., Richards v. Land Star Grp., Inc.*, 593 N.W.2d 103, 111 (Wis. Ct. App. 1999) (holding that

reformation is an equitable remedy that is meant to grant relief to parties only when the equities lie in their favor).

## III. CONCLUSION

B&K is the owner and beneficiary of the life insurance policy because it never transferred ownership of its policy to McDonald. Reformation cannot change this result, and even if it could, reformation would be improper because the equities favor B&K, not Hansen. We therefore AFFIRM the judgment of the district court.