AHNAPEE & WESTERN RAILWAY COMPANY, Appellant, v. CHALLONER and another, Respondents.

*January 31—February 28, 1967.*

136

For the appellant there were briefs by *Davis, Soquet & Cherney* of Green Bay, and oral argument by *Colburn G. Cherney.*

For the respondents there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm* of Green Bay, and oral argument by *John C. Whitney.*

HALLOWS, J.   The railroad contends there is sufficient evidence upon which the trial court should have reformed the contract and in addition the court erred in not applying the doctrine of estoppel *in pais* or the doctrine of promissory estoppel. We do not agree and we think the trial court was right in its finding.

An insurance policy like any other contract may be reformed because of mutual mistake when the policy does not contain the provisions intended by the parties to be included. But, the contract must be reformed to conform to some oral agreement or understanding which the written document was intended to express. *Center Street Fuel Co. v. Hanover Fire Ins. Co.* (1956), 272 Wis. 370, 75 N. W. (2d) 462. The quantum of proof necessary to show that through inadvertence, accident, or mutual mistake the contract of insurance does not fully or correctly set forth the intention of the parties is the so-called middle burden of proof—clear, satisfactory and convincing evidence. *Jewell v. United Fire & Casualty Co.* (1964), 25 Wis. (2d) 509, 131 N. W. (2d) 276; *Pouwels v. Cheese Makers Mut. Casualty Co.* (1949), 255 Wis. 101, 37 N. W. (2d) 869. We must therefore examine the facts to see if the trial court's finding of no mutual mistake relating to coverage as provided in the policy is against the great weight and clear preponderance of the evidence, keeping in mind "the clear and convincing" burden the railroad has. *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 112 N. W. (2d) 701.

The railroad operates a 34-mile freight system between Casco Junction and Sturgeon Bay. Vernon Bushman ac-

quired control of this railroad in 1947 and became its principal officer and stockholder. At that time he talked to defendant Challoner regarding insurance and as a result Employers issued a general liability policy and a special policy covering the railroad's liability under the Federal Employers Liability Act. The general liability policy provided property damage coverage up to $10,000 per accident. Inadvertently there was added to the policy a provision limiting the aggregate coverage for property damage in any one year to $25,000. This policy expressly excluded coverage for losses resulting from damage to property belonging to others but in the care, custody and control of the railroad, and also excluded losses arising out of the railroad's contractual liabilities.

Sometime after acquiring this policy the railroad became a member of the American Short Line Railroad Association and through it purchased a Lloyds of London policy covering all risks in excess of $10,000 up to $250,000. The Lloyds' policy expressly covered losses to property belonging to others and the railroad's contractual liability but did not cover any loss below $10,000 or any loss on which there was other valid and collectible insurance. Bushman thought his railroad had overlapping insurance coverage between $10,000 and $25,000 and wrote a letter to Challoner on March 26, 1958, attaching a copy of the Lloyds' policy. The letter read, in part:

"We direct your attention to exclusions which state that the Lloyds policy does not cover any amounts that would be payable by some other insurance coverage. Your policy, we note, covers an aggregate amount of $25,000 for property damage. We would like to have you look this thing over, so that the two policies coincide for full coverage from zero to $250,000.

"After you have reviewed this, please let me have your comments."

This letter was sent on to the home office by Challoner. The record does not show what thereafter happened to this letter or whether the home office wrote to Challoner.

However, on April 7, 1958, Challoner wrote to Bushman stating there was an error in the Employers' policy in that there was no $25,000 limit on property damage in any one year and a correcting endorsement would be issued. Thus at this time while the Employers' and Lloyds' policies meshed as to limits, their coverage was not identical because under the Employers' policy there was no coverage for losses resulting from damage to property of others in its care or for losses arising out of contractual liabilities and such losses did not come under the coverage of the Lloyds' policy until they exceeded $10,000.

As is sometimes the case in insurance, risks which are covered never happen and those which are not covered do. A derailment occurred in January of 1959, with resultant losses which fell directly within the gap in the railroad's coverage under the policies. Damages of $5,131.14 resulted to property of others in the railroad's care and custody and to rolling stock belonging to other railroads which, under the terms of its agreement with the American Short Line Railroad Association, the railroad was obligated to repair.

Bushman testified that when he discussed insurance with Challoner they talked about coverage for all risks but no memorandum was made of the discussions. He also testified he felt the railroad was covered for all risks by Employers' policy although he never carefully read it. The railroad relied on the letter of March 26, 1958, in which it claims it sought to acquire full coverage from zero to $250,000, and contends Challoner's letter of April 7th was in answer thereto and meant the policies coincided not only as to dollar-amount limits but also as to the risks covered.

Challoner testified his letter of April 7th was not intended to be an answer to the letter of March 26th but merely to correct a typographical error and at the most it related only to limits and not to coverage of the risks

undertaken. He testified he did not discuss with Bushman coverage for property in the care, custody and control of the railroad or for cargo insurance and he did not intend to provide such coverage. He further testified his company might issue blanket coverage for a contractual liability but this was done on an individual-contract basis by the home office.

This evidence, as the trial court held, fell far short of establishing a mutual mistake; in fact, it is conflicting. Although circumstances, the nature of the transaction and the conduct of the parties may be considered in determining whether a mutual mistake has been made in the written contract and to establish the oral agreement, *Kadow v. Aluminum Specialty Co.* (1948), 253 Wis. 76, 33 N. W. (2d) 236, the circumstances and conduct here do not give rise to a reasonable inference of mistake or that the parties intended insurance coverage greater in scope than that provided by the written policy. The findings of the trial judge were not against the great weight and clear preponderance of the evidence and on this point must be affirmed.

It is argued the trial court failed to apply the doctrines of estoppel *in pais* and promissory estoppel and since Bushman believed he had coverage for all risks, which was reasonable and induced by the defendants, they should be estopped from claiming the insurance policy excluded losses resulting from damage to property of others in the railroad's care and those arising out of its contractual obligations. The difficulty with this argument is that while estoppel may be used to prevent an insurer from insisting upon conditions which result in forfeiture, estoppel has not been used in this state or in the majority of states as a means whereby the scope of coverage of an insurance policy can be expanded to include coverage which was not provided for or was excluded in the contract. The railroad contends the language in *Jeske v. General Accident Fire & Life Assur. Corp.*

(1957), 1 Wis. (2d) 70, 83 N. W. (2d) 167, stands for the proposition that equitable estoppel may enlarge coverage of a written insurance policy. We think not.

The rule that estoppel may apply to a forfeiture of benefits contracted for but cannot be successfully invoked to create a liability for benefits or coverage not contracted for was first laid down in this state in *McCoy v. Northwestern Mut. Relief Asso.* (1896), 92 Wis. 577, 66 N. W. 697. The *McCoy Case* has been regarded as one of the early and important cases on the subject. That case dealt with death benefits on a life insurance policy which expressly provided that suicide was not assumed as a risk. The insurance was on the assessment plan and the company made at least two assessments to pay death claims caused by suicide and it was claimed this procedure induced McCoy to think the company would not insist on such limitation in its policy. Upon McCoy's suicide his wife brought suit to recover on the policy and recovery was denied. This court characterized what was sought by estoppel was not to prevent a forfeiture but to make a new contract to cover suicide when by the contract it was expressly excluded.

Estoppel rules have consistently been held by this court not to apply to extend coverage in other types of insurance contracts. In *Rosenthal v. Insurance Co. of North America* (1914), 158 Wis. 550, 149 N. W. 155, the fire insurance policy insured horses "while contained in" a named location "but not elsewhere." The horses were destroyed at a different location while the premises designated in the insurance contract were being repaired. This court considered use of waiver to extend the scope of the written contract of insurance beyond the usual and ordinary meaning of the language "would be quite a novelty" and denied recovery. This court refused to apply waiver or estoppel to enlarge coverage of personal property "while located and contained as described herein, . . . but not

elsewhere" in *Summers v. Oakfield Town Mut. Fire Ins. Co.* (1944), 245 Wis. 40, 13 N. W. (2d) 518. In *Two Rivers Dredge & Dock Co. v. Maryland Casualty Co.* (1918), 168 Wis. 96, 169 N. W. 291, a liability policy excluded workmen's compensation coverage, but by an endorsement such risk was included for the state of Wisconsin. The insured also did business in Ohio, which during the term of the policy passed a Workmen's Compensation Act. This was known by the insurer but it did nothing about adding this risk to the plaintiff's insurance. After an Ohio accident for which the insured paid the compensation claim, it brought an action against the insurer. This court held neither waiver nor estoppel could be used to enlarge the coverage of the policy to include workmen's compensation claims in Ohio.

What terms, conditions and provisions in a policy may be considered as forfeiture clauses and what language is considered essentially coverage is not always free from doubt. We think neither the type of insurance policy nor the form of language in the policy necessarily controls the question. The coverage provisions of the policy must, of course, be distinguished from its liability provisions. As a general rule, conditions and terms, either of an inclusionary or exclusionary nature in the policy, go to the scope of the coverage or delineate the risks assumed, as distinguished from conditions and terms which furnish a ground for the forfeiture of coverage or defeasance of liability. Only in a few states can the doctrine of estoppel be used to enlarge the coverage of an insurance policy. An extensive annotation on the problem in 1 A. L. R. (3d) 1139 is summarized by the author at page 1144: "While waiver and estoppel have been held applicable to nearly every area in which an insurer may deny liability, the courts of most jurisdictions agree that these concepts are not available to broaden the coverage of a policy so as to protect the insured against risks not included

therein or expressly excluded therefrom. The theory underlying this rule seems to be that the company should not be required by waiver and estoppel to pay a loss for which it charged no premium, and the principle has been announced in scores of cases involving almost every conceivable type of policy or coverage provision thereof."

This rule is stated in substantially the same language in 29A Am. Jur., Insurance, p. 289, sec. 1135, and pp. 187–189, secs. 1013, 1014; 16 Appleman, Insurance Law & Practice, p. 629, sec. 9090; 45 C. J. S., Insurance, p. 614, sec. 674. For criticisms of the general rule, see Note, Insurance—Extension of Coverage by Waiver or Estoppel, 25 North Carolina Law Review (1947), 209; Note, Waiver and Estoppel Used to Extend Insurance Coverage, 25 Maryland Law Review (1965), 337, 341; *Farmers Mut. Automobile Ins. Co. v. Bechard* (1963), 80 S. D. 237, 122 N. W. (2d) 86; 1 A. L. R. (3d) 1124.

We do not consider *Jeske v. General Accident Fire & Life Assur. Corp., supra,* relied upon by the appellants as changing the rule in Wisconsin. That case involved the reformation of a manufacturers' and contractors' liability policy in order to cover the wrecking and demolition operations of the plaintiff on a dismantling job in Green Bay. The facts in *Jeske* plainly show the contractor asked for specific coverage for the demolition job and the agent knew of Jeske's specific insurance requirement for the job which called for $10,000 of coverage for the risks inherent in demolition work, and intended to grant such insurance. The company refused to increase the $5,000 limits of the existing policy and the agent under such circumstances issued to the city of Green Bay a certificate indicating Jeske had $5,000 of the required kind of insurance. Past conduct also showed that demolition jobs between the plaintiff and the insurer were the subject of individual adjustment. There, as here, a Lloyds of London policy was secured for the excess limits. A mishap in

the course of the demolition caused $4,400 damage. When called upon to pay, however, the primary insurer pointed out that the policy issued to Jeske expressly excluded risks arising from demolition work. This court affirmed the lower court in finding the existence of an oral agreement between Jeske and the agent for insurance covering, up to the limits of the policy, the demolition of the building on the Green Bay job and therefore the policy should be reformed to express such agreement.

In answering the further contention that estoppel could not be used as a basis of recovery, the court in *Jeske* distinguished the *Two Rivers Case* and pointed out that estoppel was available to avoid a forfeiture but was not a basis for increasing coverage. True, some of the language of the case read out of context may be misleading but if read in the light of the facts, which should always be done in analyzing a legal opinion, the case cannot be said to stand for the doctrine that equitable estoppel may be used to add coverage which was not included in the policy or which was expressly excluded. In the same year in which *Jeske* was decided, this court decided *Albert v. Home Fire & Marine Ins. Co.* (1957), 275 Wis. 280, 81 N. W. (2d) 549, in which the distinction between estoppel to prevent a forfeiture and estoppel to expand coverage was recognized.

What we have said applies both to waiver and equitable estoppel or estoppel *in pais* in the traditional sense in which those concepts are understood. The railroad, however, argues the trial court erred in failing to apply the doctrine of promissory estoppel, which this court accepted in *Hoffman v. Red Owl Stores, Inc.* (1965), 26 Wis. (2d) 683, 133 N. W. (2d) 267. In *Hoffman*, at page 694, we adopted sec. 90 of Restatement, 1 Contracts, as correctly setting forth the promissory-estoppel rule as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and sub-

stantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

We do not decide whether this doctrine may be used as a tool to increase coverage of an insurance contract and we reserve that question, noting that the basis of promissory estoppel is akin to the contractual basis for reformation. The doctrine is inapplicable to the present facts, however, because the facts in the instant case do not include a promise which Employers should have reasonably expected to induce forbearance on the part of the railroad. Neither the circumstances of the original issuance of the policy nor Challoner's letter of April 7th constitutes a promise within the meaning of the promissory-estoppel doctrine.

*By the Court.*—Judgment affirmed.