In the

# United States Court of Appeals
### For the Seventh Circuit

Nos. 09-1645, 09-1715 & 09-1783

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE
COMPANY, c/o AMERICAN INTERNATIONAL SURPLUS
LINES AGENCY INC.,

*Defendant, Third-Party Plaintiff-Appellant,*
*Cross-Appellee,*

*v.*

CRUMP INSURANCE SERVICES OF ILLINOIS AND
CRUMP GROUP, INCORPORATED,

*Third-Party Defendants-Appellants.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 1352—**Aaron E. Goodstein**, *Magistrate Judge.*

ARGUED OCTOBER 29, 2009—DECIDED MARCH 10, 2010

Before FLAUM, MANION, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* When 19 acres of land are offered for sale for $1.00, any purchaser has reason to be wary. The Milwaukee Metropolitan Sewerage District is responsible for flood control and wastewater treatment in the greater Milwaukee area. As part of a flood control project, the District needed to acquire from Milwaukee County a piece of real estate along Lincoln Creek. The nominal asking price was $1.00. In anticipation of possible pollution clean-up costs, the project manager recommended obtaining insurance coverage, which the District directed its insurance agency to acquire. After a policy was issued, the District acquired title to the land. Soon thereafter, the District encountered significant pollution on the land. But when it submitted a claim to its environmental liability insurer, American International Specialty Lines Insurance Company ("AISLIC"), for costs incurred in removing the pollution, the insurer denied coverage. The District then sued AISLIC in Wisconsin state court seeking damages under several state law claims. Following removal to federal court and a bench trial, the district court concluded that coverage for the pollution was appropriate. The court reformed the District's insurance policy with AISLIC to provide coverage for the pollution removal costs and entered judgment for $226,468.51 in favor of the District. The court also entered judgment in the same amount for AISLIC on its indemnity claim against Crump Insurance Services of Illinois, Inc. ("Crump"). AISLIC and Crump appeal from the district court's judgment, and the District cross-appeals the judgment and the denials of its post-trial motions. For

the reasons that follow, we reverse the judgment of the district court and remand with instructions to enter judgment for AISLIC on the District's reformation claim and to dismiss AISLIC's indemnity claim against Crump as moot. We also dismiss the District's cross-appeal as moot.

I.

The District provides wastewater treatment services to 28 communities in the greater Milwaukee area. It also performs flood control and environmental pollution abatement work. In the late 1990s, the District developed the Lincoln Creek Flood Control Management Plan ("Plan") to reduce flooding along a nine-mile stretch of Lincoln Creek. The Plan was subdivided into ten segments called "reaches." In order to implement the Plan along Reach 3, the District needed to purchase a piece of land ("Parcel") that was owned by Milwaukee County. Up to that point, the County had refused to allow the District to perform soil testing on the Parcel to check for pollution. James Ibach, a design and construction manager for the District, recommended that District policymakers consider procuring environmental liability insurance "to protect the risk that the District might be exposed to in the event that we encountered pollutants on the property during construction." Therefore, before purchasing the Parcel, the District set out to procure such insurance.

In late 1998, representatives from the District and its retail insurance broker, Sedgwick of Illinois, Inc., had a meeting during which environmental insurance coverage

for "Lincoln Creek" was discussed. In December 1998, Glinda Loving, the District's risk management coordinator, provided Sedgwick with information about the District's desired pollution coverage for "Lincoln Creek," including excerpts from a Phase I Study. The Phase I Study was a 270-page document entitled, "Draft Preliminary Environmental Site Assessment of Lincoln Creek From Reach 1 Through Reach 6, Lincoln Creek Flood Control Design Phase II, Milwaukee, Wisconsin." Loving believed "Lincoln Creek" referred to the Parcel and mistakenly thought the Phase I Study was limited to the Parcel. In fact, the Phase I Study did not contain any specific description of the Parcel. After receiving the voluminous document, Sedgwick did not determine precisely what "Lincoln Creek" meant, other than a piece of land the Phase I Study supposedly described that the District might buy from the County for $1.00.

On December 7, 1998, Barbara Piller of Sedgwick contacted Tim Turner at Crump,[1] a wholesale insurance broker, to place environmental coverage for the District on the Parcel. Sedgwick provided Crump with a complete copy of the Phase I Study. Sedgwick also asked Crump whether that would be sufficient information for an underwriter to determine whether to provide coverage for the property. On February 25, 1999, the District authorized Sedgwick to bind coverage for five

---

[1] Crump Group, Inc., is also a party to this case. In this opinion, we refer to it and Crump Insurance Services of Illinois, Inc., collectively as "Crump."

properties: two treatment plants, a garage maintenance facility, a fill-monitoring facility, and "Lincoln Creek."[2] All of the properties except Lincoln Creek were identified by an address; Lincoln Creek was identified only by name. Sedgwick forwarded the District's order to bind coverage to Crump, which then faxed the order to the insurer, AISLIC. The next day (February 26), AISLIC faxed Crump a confirmation that it had bound coverage. Crump immediately passed that information along to Sedgwick and indicated that Lincoln Creek was a covered property. Crump also told Sedgwick that AISLIC needed a completed application from the District because the prior quote from November 1997 had expired. On March 1, AISLIC faxed Crump a binder specifying the insured properties; Lincoln Creek was not one of them. The next day, Crump noticed that Lincoln Creek was not listed as an insured property on the binder and informed AISLIC that Lincoln Creek would be on the application that the District was submitting. Crump then added Lincoln Creek to the list of insured properties, placed the altered binder on its letterhead, and faxed it to Sedgwick. In the altered binder, Crump indicated that coverage was subject to the receipt and satisfactory review of an application with site ad-

---

[2] In November 1997, the District had sought a quote through Sedgwick for coverage for the same two treatment plants, garage maintenance facility, and fill-monitoring facility. Sedgwick contacted Crump, and Crump secured quotes from AISLIC and Zurich American. The District decided not to obtain coverage at that time.

dresses for the insured properties by March 5.[3] A few minutes later, Crump faxed the altered binder to AISLIC. Later that day (still March 2), AISLIC responded to Crump's fax, objecting to Crump's inclusion of Lincoln Creek on the binder and unequivocally stating that it was not an insured property.

On March 5, Sedgwick forwarded the District's completed application to Crump. Four properties were listed in the application, each accompanied by an address and an operations description. A fifth property, "Lincoln Creek," was described only by name; no address or operations description was provided. The only information about "Lincoln Creek" on the application was the name of Glinda Loving as a contact person and a general reference to the Phase I Study. On March 8, a few days after Crump sent AISLIC the District's application, AISLIC informed Crump that it was unwilling to include Lincoln Creek on the Policy as an insured property because underwriting guidelines required an insured property be owned by, leased by, or in the operational control of an insured. The next day, AISLIC sent Crump a letter setting forth the properties that would be included on the Policy. In addition to the four facility properties listed on the original binder, a fifth property at 4830 N. 32nd Street in Milwaukee was listed. AISLIC indicated that it believed the District had a location at that address and would add it to the Policy

---

[3] On March 2, Sedgwick forwarded the altered binder to the District, along with a premium invoice that the District paid.

if the District still had control over it.[4] AISLIC also stated that coverage for Lincoln Creek would have to be provided by a separate CPL (contractor's pollution liability) project policy inasmuch as the District was engaged in a multi-year project involving various activities along the entire creek. AISLIC asked Crump to advise it on how to proceed regarding the Lincoln Creek project. On March 12, Tim Turner at Crump sent Joe Spina at Sedgwick a fax indicating that AISLIC was "having difficulty adding the entire 'Lincoln Creek'" to the policy and could only add "the portion that the insured owns, and/or operates." The fax also asked Sedgwick to provide "an address for [the District's] property on the creek" and reiterated that "the insured must own or operate the property in order to schedule it." Turner re-sent the same fax to Sedgwick on March 29. This time he pencilled in Piller as an additional recipient and wrote, "Urgent!" on the front of the memo. Sedgwick did not notify the District of any of the information from the faxes. Neither the District nor Sedgwick ever responded to either fax.

On March 16, AISLIC issued a policy for the District that named the four original properties and the 4830 N. 32nd Street location as insured properties. Lincoln Creek was not scheduled as an insured property. Crump sent the policy to Sedgwick on March 22,

---

[4] The 4830 N. 32nd Street location was a facility AISLIC learned about in the Phase I Study and added to the Policy as a "freebie."

asking Sedgwick to review it carefully to verify it met Sedgwick's specifications and to advise Crump of any corrections or changes. Five months later in September 1999, Sedgwick forwarded the policy to the District. Glinda Loving reviewed the policy and noticed that it listed the 32nd Street location instead of Lincoln Creek. She contacted Piller at Sedgwick to inquire about the discrepancy. Piller told Loving that the 32nd Street address referred to Lincoln Creek. Sedgwick then sent Crump a fax advising it that the address for the fifth location should be amended to read "Lincoln Creek from Silver Springs to River Mile Roads." That address, which Sedgwick obtained from the Phase I Study, actually referred to Reaches 1 through 6 of the Plan; it did not describe the Parcel. Sedgwick did not recall Crump responding to the fax, and neither Sedgwick nor the District ever pursued the matter further.

One month later on October 19, the District purchased the Parcel from the County. When it did so, the District knew from soil borings taken from the Parcel a few months earlier that foundry sand, slag, and waste ash— all of which are environmental concerns—were present in some amount. While excavating on the Parcel a month later, the District encountered large quantities of waste ash. In March 2000, the District submitted a claim to AISLIC for $731,835.75 in costs it incurred removing the waste ash from the Parcel. In December 2001, AISLIC denied the claim, asserting that the Parcel was not an insured property.

In November 2005, the District sued Sedgwick, AISLIC, and others not relevant here in Wisconsin state court,

asserting state law claims against AISLIC for breach of contract, promissory estoppel, and reformation of the policy, and a claim against Sedgwick for negligent misrepresentation. The defendants removed the action to the Eastern District of Wisconsin based on diversity jurisdiction. AISLIC filed a third-party complaint against Crump for indemnification in the event judgment was entered against AISLIC in favor of the District. The parties consented to a magistrate judge conducting all proceedings in the case.

Following cross-motions for summary judgment by the District and AISLIC, the district court granted summary judgment for AISLIC on the District's breach of contract and promissory estoppel claims, denied both AISLIC's and the District's motions for summary judgment on the reformation claim, and denied AISLIC's motion for summary judgment against Crump. Upon reaching a settlement with Sedgwick, the District stipulated to the dismissal of its claim against Sedgwick.

After holding a bench trial with an advisory jury, the district court found that Crump was AISLIC's agent. The court then concluded that the reason the Parcel was not covered under the policy was Crump's failure to obtain the information AISLIC needed in order to insure the Parcel and to communicate to Sedgwick or the District in no uncertain terms that such information was required. Imputing Crump's error to AISLIC, the court reformed the policy to include the Parcel as an insured property and entered judgment in favor of the

District against AISLIC for $226,468.51 plus costs.[5] The
court also entered judgment in the same amount in favor
of AISLIC on its indemnity claim against Crump. The
District filed post-judgment motions asking the court to
award prejudgment interest, to increase the damages
award, and to reconsider its decision offsetting the Dis-
trict's damages by the amount of the settlement with
Sedgwick. The district court denied all three motions.
AISLIC and Crump appeal the district court's judg-
ment; the District cross-appeals the judgment and the
denial of its post-judgment motions.[6]


                           II.

   As a federal court sitting in diversity, we apply state
law to substantive issues and federal law to procedural
and evidentiary matters. *Bevolo v. Carter*, 447 F.3d 979,
982 (7th Cir. 2006). The parties agree that Wisconsin
substantive law applies. In diversity cases where, as here,

---

[5] The district court adopted the advisory jury's determination
that the District incurred $404,148.51 in pollution clean-up
costs on the Parcel. The court then reduced that sum by the
policy's $100,000 deductible and the amount ($77,680.00) of
the District's settlement with Sedgwick to arrive at the
$226,468.51 total.

[6] The District has not appealed the district court's adverse
summary judgment determinations on its breach of contract
and promissory estoppel claims. The only one of the District's
claims at issue on appeal is its reformation claim, upon
which the court's judgment against AISLIC is based.

the judge was the trier of fact, federal law governs our standard of review. *Tax Track Sys. Corp. v. New Investor World, Inc.*, 478 F.3d 783, 789 (7th Cir. 2007). Accordingly, we review the district court's legal conclusions de novo and its findings of fact and application of law to facts for clear error. *Cohen Dev. Co. v. JMJ Props., Inc.*, 317 F.3d 729, 735 (7th Cir. 2003).

We turn first to AISLIC's argument that the district court erred by reforming the policy to include the Parcel as a covered property. In Wisconsin, when an insurance policy fails to express a prior agreement between parties because of either the mutual mistake of both parties regarding the contents or effect of the policy or the mistake of one party coupled with fraud or inequitable conduct by the other party, the policy may be reformed to reflect the prior agreement. *Russ ex rel. Schwartz v. Russ*, 734 N.W.2d 874, 885 (Wis. 2007); *Vandenberg v. Continental Ins. Co.*, 628 N.W.2d 876, 889 & n.35 (Wis. 2001). If no prior agreement was reached by the parties, however, there can be no reformation of the policy. *E.g.*, *Int'l Chiropractors Ins. Co. v. Gonstead*, 238 N.W.2d 725, 729 (Wis. 1976); *Frantl Indus., Inc. v. Maier Constr., Inc.*, 229 N.W.2d 610, 611 (Wis. 1975); *Ahnapee & W. Ry. Co. v. Challoner*, 148 N.W.2d 646, 648 (Wis. 1967). A prior agreement on the detail that the policy failed to express only exists if the parties came to a "'meeting of the minds'" on that provision. *Frantl*, 229 N.W.2d at 612 (quoting *Touchett v. E Z Paintr Corp.*, 58 N.W.2d 448, 450 (Wis. 1953)); *accord Trs. of St. Clara Female Acad. of Sinsinawa Mound v. Delaware Ins. Co.*, 66 N.W. 1140, 1143 (Wis. 1896); *see also Trible v. Tower Ins. Co.*, 168 N.W.2d 148,

154 (Wis. 1969) (an applicant for insurance must state relevant facts to insurer's agent and the agent must understand).

One prerequisite for a valid agreement is that the parties' minds met regarding the particular property to be insured. *John R. Davis Lumber Co. v. Scottish Union & Nat'l Ins. Co.*, 69 N.W. 156, 156 (Wis. 1896); *Mattoon Mfg. Co. v. Oshkosh Mut. Fire Ins. Co.*, 35 N.W. 12, 16 (Wis. 1887). Whether there has been such a meeting of the minds is a fact question, *In re Estate of Kobylski*, 503 N.W.2d 369, 381 (Wis. Ct. App. 1993), that must be proven by "clear, satisfactory, and convincing evidence," *Frantl*, 229 N.W.2d at 611; *accord Ahnapee*, 148 N.W.2d at 648; *Samuels Recycling Co. v. CNA Ins. Cos.*, 588 N.W.2d 385, 389 (Wis. Ct. App. 1998).

The district court found that the District, acting through its agent Sedgwick, communicated its desire for environmental liability coverage on the Parcel to AISLIC through AISLIC's agent, Crump,[7] and concluded that the colloquial description of the Parcel as "Lincoln Creek" was a sufficient description of the property. The court also determined that the District had proven by clear and convincing evidence that Crump understood that the District wanted environmental hazard coverage

---

[7]  On appeal, AISLIC disputes the district court's determination that Crump was its agent and argues that Crump was actually the District's agent. We will assume *arguendo* that the district court's agency findings are correct. As we shall see, in light of our holding we need not decide these issues.

for the Parcel, even though Crump never understood the exact metes and bounds of the Parcel. AISLIC contends that the district court clearly erred in finding these facts and thus in concluding that a prior agreement existed between AISLIC and the District that the Parcel was to be a covered property.

We agree. Glinda Loving's testimony concerning her discussions with Sedgwick in December 1998 demonstrates that she never understood the precise (or even the general) contours of the Parcel that she referred to as Lincoln Creek. She stated that she believed the lengthy Phase I Study described the Parcel when, in fact, it encompassed Reaches 1-6 of the entire Plan. As it turned out, the Parcel was only a 19-acre component of Reach 3, and nowhere in the Phase I Study was the Parcel identified or specifically described. Operating under the mistaken impression that the Phase I Study described the Parcel, Loving attached that document or excerpts therefrom to her communications with Sedgwick. Sedgwick's only understanding regarding "Lincoln Creek" was that it was a piece of land the District was buying from the County for $1.00 and that was supposedly described by the Phase I Study. Sedgwick conveyed that same meager understanding and the Phase I Study to Crump, and Crump passed it on to AISLIC. In the application, the District did not provide, as requested, an address for "Lincoln Creek" or any description of site operations. Again, the only information the District provided was the name of the property, a reference to the Phase I Study, and the name of Glinda Loving as a contact person. This evidence shows that

the most precise description of the Parcel that AISLIC ever received (either directly or imputedly through its purported agent Crump) was that the Parcel was a piece of land located somewhere in Reaches 1-6 along the creek. That description was patently insufficient to communicate to AISLIC the property for which the District was seeking environmental liability coverage.[8]

The case of *Wege v. Boehm*, 199 N.W. 210 (Wis. 1924), illustrates the point. In *Wege*, defendant-lessors of a piece of land counterclaimed for reformation of a recorded lease agreement that did not contain a description of the leased premises. *Id.* at 211. The trial court ordered reformation of the lease to conform to the description of the premises the court found the plaintiff had agreed to lease. *Id.* The plaintiff appealed, and the Wisconsin Supreme Court reversed, holding that reformation

---

[8] The quitclaim deed conveying the Parcel from Milwaukee County to the District contained a comprehensive metes and bounds description along with a statement that the Parcel consists of 18.99 acres. Obviously before negotiating for insurance, Loving could have obtained and provided this description to Sedgwick or Sedgwick could have obtained it. As it was, neither the District nor Sedgwick had any idea about the location or legal description of the Parcel. This means they could not have communicated an adequate description to AISLIC, and there is no evidence in the record that AISLIC acquired knowledge of the particular parameters of the Parcel from other sources. Therefore, there could not have been any meeting of the parties' minds and reformation of the policy to insure the land is not possible.

of the lease was inappropriate because no antecedent agreement had been reached between the plaintiff and defendants regarding the parameters of the leased premises. *Id.* at 212. Specifically, the court found that the minds of the parties did not meet upon any definite piece of land when the leased property was described as extending to "about to that tree" or "about to that point." *Id.* Here, with even less precision, the District denominated "Lincoln Creek" using only the 270-page Phase I Study. At best, AISLIC understood that Lincoln Creek was a piece of land somewhere in Reaches 1-6. As in *Wege*, "[n]umerous descriptions would respond to this suggestion*." Id.* Therefore, there was no meeting of the minds regarding the actual property that the District wished to insure, which is fatal to its reformation claim.

The district court found that Crump understood the nature of the Parcel based on the fact that the altered binder Crump issued listed "Lincoln Creek" as an insured property. But that fact alone is not indicative of a meeting of the minds between AISLIC and the District regarding to what precise property that term referred, especially in light of the March 12 fax Crump sent to Sedgwick after the altered binder was issued and AISLIC had received and reviewed the District's application. In that fax, Crump informed Sedgwick that AISLIC was "having difficulty adding the entire 'Lincoln Creek'" to the policy and could only add "the portion that the insured owns, and/or operates." That missive from Crump indicated that the scant information the District had given AISLIC did not allow AISLIC to understand the precise property to be insured. Based on all of

the evidence in the record, we conclude that the district court's finding that there was clear and convincing proof that a prior agreement existed between AISLIC and the District that the Parcel would be a covered property was clearly erroneous.

But even if that finding by the district court was not clearly erroneous, its judgment cannot stand for another reason: as shown below, the District knew that the policy did not include coverage for the Parcel. As the party seeking reformation, the District must have mistakenly believed that Lincoln Creek would be a covered property under the policy. *See Russ*, 734 N.W.2d at 885 (reformation requires either mistake of both parties or mistake of party seeking reformation and fraud or inequitable conduct by the other party). That mistake must have occurred at the time the policy was executed. *See Breeden v. Breeden*, 93 N.W.2d 854, 856 (Wis. 1959); *see also* 2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 27:3, at 27-7 (3d ed. 1995) ("The party seeking reformation must establish a . . . mistake of fact *which was in existence at the time the policy was executed*.") (emphasis added). But if the District knew that the policy would not cover the Parcel, then by definition it was not operating under any mistake of fact and is not entitled to reformation. *Rebernick v. Wausau Gen. Ins. Co.*, 692 N.W.2d 348, 353 (Wis. Ct. App. 2004) ("Actual knowledge, of course, negates the 'mistake' element.").

Viewed as a whole, the record indicates that the District knew that the policy would not include "Lincoln Creek" as an insured property. From the very

beginning of the District's efforts to obtain coverage for the Parcel, its agent Sedgwick was concerned that the information it was providing to Crump might not be sufficient for AISLIC to decide whether to provide coverage. In a letter to Crump in December 1998, Sedgwick asked whether there was "enough information included for an underwriter to determine whether [AISLIC] will provide coverage for the property." Then, in the altered binder, Crump indicated that AISLIC's coverage of the properties listed was subject to the "[r]eceipt and satisfactory review of the original and signed application (with site addresses)" by March 5, 1999. In the application it submitted, however, the District failed to provide an address (and an operations description) for "Lincoln Creek." Because it knew that coverage for "Lincoln Creek" was contingent upon the provision of a site address, the District could not have reasonably thought the property would be covered upon the policy's issuance. Perhaps most importantly, before the policy was issued, Crump's March 12 fax informed Sedgwick that AISLIC was "having difficulty adding the entire 'Lincoln Creek'" to the policy and could only add "the portion that the insured owns, and/or operates."[9] Crump also asked Sedgwick if it could provide "an address for [the District's] property on the creek" and repeated that "the

---

[9] The district court thought the March 12 fax was not sent by Crump until after the policy was issued. That was a clearly erroneous conclusion: the policy was issued on March 16. The district court's error may have resulted from the fact that Crump re-sent the same fax to Sedgwick on March 29.

insured must own or operate the property in order to schedule it." That fax clearly informed Sedgwick— an experienced retail insurance broker—that AISLIC was not yet willing to include Lincoln Creek as a covered property under the policy and needed an address for the property on the Creek.[10] Thus through Sedgwick, the District knew that at that point the Parcel would not be covered by the policy. In addition, the March 12 fax stated in no uncertain terms that Lincoln Creek must be either owned or operated by the District in order for it to be covered. Yet the District did not acquire title to the Parcel until over seven months later on October 19, and there is no indication in the record that the District operated or otherwise exercised control over the Parcel when the policy was issued. Because its agent Sedgwick[11] knew that "Lincoln Creek" would not be covered unless the District owned or operated the land, the District cannot reasonably claim to have proceeded under a mistake that the policy would cover the Parcel before satisfying that requirement. Absent a mistake on the part of the District at the time the policy was issued, reformation was not an available remedy under Wisconsin law.

---

[10] Piller testified that Sedgwick received the fax but did not recall responding, and Spina acknowledged that he was still at Sedgwick when the faxes arrived but left the company on March 31 without responding. Sedgwick did not send the proposed policy to the District until September 1999, five months after receiving it from Crump.

[11] As noted above, Sedgwick entered into a settlement with the District before trial and is no longer a party in the lawsuit.

For these reasons, AISLIC is entitled to judgment on the District's reformation claim. Because there is no judgment for which Crump may indemnify AISLIC, the district court's judgment against Crump on AISLIC's indemnity claim cannot stand. In addition, the District's cross-appeal concerning the district court's denial of its three post-trial motions is moot.

## III.

Having concluded that the District is not entitled to reformation of the policy under Wisconsin law, we REVERSE the judgment of the district court and REMAND with instructions to enter judgment for AISLIC. We also VACATE the district court's judgment against Crump on AISLIC's indemnity claim and REMAND with instructions to dismiss that claim as moot. The District's cross-appeal is moot and is hereby DISMISSED.